Judgment affirmed.

*New-Haven,*
July, 1851.

Derwort & ux.
*v.*
Loomer.

---

## DERWORT and wife *against* LOOMER.

| 21 | 245 |
| 68 | 297 |
| 21 | 245 |
| 77 | 692 |

The court is reluctant, at all times, to set aside the verdict of a jury, because they have erred in weighing evidence ; nor will the court feel at liberty to do this, where the jury have passed upon a mere question of fact, unless the verdict is so palpably against the evidence as to shew that their minds were not open to reason and conviction, or that an improper influence was brought to bear on their deliberations.

But where the action was for injuries to the plaintiff, by the overturning of a stage-coach in which she was a passenger, resulting from the negligence of the defendant's agent; and *from the undisputed facts in the case,* the court could see, that there was culpable negligence in the defendant's agent ; the defence rested, not only upon the absence of such negligence, but a settlement and discharge, by the plaintiff's attorney, whose authority was denied ; and both issues being submitted to the jury upon the evidence, they gave a verdict for the defendant ; it was held, that the jury must have proceeded upon false notions of law, and as, in the opinion of the court, the verdict was against the evidence, on both grounds, a new trial was granted.

In such cases, *legal negligence is not a pure question of fact for the jury,* but is mixed up with principles of law, so that its determination involves

*New-Haven,*
July, 1851.

Derwort & ux.
*v.*
Loomer.

a conclusion of law, or more properly, a rule of responsibility, to be applied by the court.

In the case of common carriers of passengers, the highest degree of care, which a reasonable man would use, is required by law.

This rule applies alike to the character of the vehicle, the horses and harness, the skill and sobriety of the driver, his watchfulness, and his conduct, under every emergency or difficulty.

The contract to carry passengers differs from that to carry freight, only in this, that in the latter case, the carrier is responsible at all events, except for the act of God and the public enemy.

Public notice given by a carrier, that he will not be responsible for freight, or that it is at the risk of the owner, will not vary the carrier's liability.

Nor will the custom of stage-proprietors and their drivers to load down the vehicle, with passengers and freight, to its utmost capacity, regardless of the state of the roads, exonerate them from liability.

The practice of converting stage-coaches into freight wagons, to transport iron, and almost every thing else, is an innovation upon the rights of the travelling community, which the court will not sanction or countenance.

An attorney, employed to commence and prosecute a suit, but not otherwise authorised, has no power to settle that suit, and discharge the defendant from the plaintiff's claim.

THIS was an action on the case, for injuries sustained by *Marion Derwort*, one of the plaintiffs, and wife of *George H. Derwort*, the other plaintiff, in consequence of the overturning of a stage-coach, owned by the defendant, and used by him for the conveyance of passengers for hire, from *Bridgeport* to *Derby*.

The declaration, after alleging, that the defendant received said *Marion*, as a passenger, to be conveyed safely, in his stage-coach, from *Bridgeport* to *Derby*, for a certain reward, averred, that the defendant, not regarding his duty, did not use proper care, but neglected so to do, and suffered a large quantity of iron, to wit, one ton of iron, and divers other ponderous articles, to be deposited on the top of said coach; and did permit said coach to be greatly overloaded; and did permit said coach to be driven in and over an unsafe and unusual part of the road, from said *Bridgeport* to said *Derby*, so that, by means of said iron being deposited on said coach as aforesaid, and by reason of said coach being overloaded, and also by reason of the coach being driven upon and over an unsafe and unusual part of said highway, by the defendant, and while said coach was proceeding with said *Marion* therein, in and along the public highway from *Bridgeport* to *Derby*, and before the arrival of the same at *Derby*, the coach was overturned;

by means whereof, one of the arms of said *Marion* was bro- *New-Haven,*
July, 1851.
ken, and she was otherwise greatly bruised, wounded and
injured, and became sick, sore, lame and disordered, and has Derwort & ux.
*v.*
Loomer.
so continued to the present time.

The defendant pleaded, 1st, the general issue ; 2dly, a
release and discharge of the defendant, by *Henry T. Hug-
gins,* Esq., the attorney of the plaintiffs, in consideration of
the sum of 350 dollars, paid by him, to said *George H. Der-
wort;* which sum the latter accepted and received of the
defendant, in full satisfaction and discharge of the griev-
ances alleged.

On these issues the cause was tried, at *New-Haven, Jan-
uary* term, 1851.

The evidence adduced is too voluminous to be detailed in
this report.    On the general issue, the following witnesses
testified for the plaintiffs.    *G. H. Derwort,* one of the plain-
tiffs ; *Marion Derwort,* his wife, also one of the plaintiffs,
and the person injured ; *Julius R. Pond, Edwin Wells,* Dr.
*Frederick J. Judson,* Dr. *Samuel Beach, Joseph Sands,
Philo F. Barnum, Charles Schwageller, G. A. Wells* and
Dr. *Foot.*

On the same issue, the following witnesses testified for
the defendant.    *James Bradley,* driver of the stage-coach ;
*Lewis Downs, David L. Mills, Jeremiah Allen, Sanford Ste-
vens, James Nasson, Garry M. Peck,* Mrs. *Bassett, Thomas
Burlock* and *Richard Welton.*

From the whole testimony the following facts were proved,
with litle or no discrepancy.    On the 13th of *February,*
1849, the plaintiffs took passage, at *Bridgeport,* in a stage-
sleigh, owned by the defendant, and driven by *James Brad-
ley,* from that city to *Birmingham,* in the town of *Derby.*
There were eleven passengers, exclusive of two children of
the plaintiffs, their luggage, and a quantity of iron, (upwards
of 400 *lb.*) on the top, projecting before and behind.    After
going between one or two miles from *Bridgeport, Northerly,*
towards *Birmingham,* the sleigh passed into a deep cut,
where the snow was blown in ; the sleigh being on double
sets of runners, the fore-runners went steady, while the hind
runners slid round, and the vehicle, with its contents, turned
over.    Mrs. *Derwort's* arm was broken, and she was other-
wise bruised and injured.    This was, in some degree, a dan-

gerous place.    On the *West* bank of the road, the snow was
deep; on the right, there was a hollow or gutter.    On the
question of *negligence* in the driver, in this instance, the
testimony was various, and somewhat discordant; but that
he had experience in this business, was of good habits and
generally careful, was admitted, or proved and not denied.

On the special plea, the defendant, to prove the authority
of *Huggins* to make the settlement and give the discharge,
introduced the testimony of *R. H. Osborn*, clerk of the court;
*Henry T. Huggins*, the acting attorney; *Sidney B. Beards-
ley*, his partner in business, when the suit was commenced;
*Sylvester P. Smith*, *L. L. Loomer*, the defendant and ————
*Wooster*.

The testimony of these witnesses was met, on the part of
the plaintiffs, by that of *S. B. Beardsley*, further examined,
of *Charles Nettleton*, *G. H. Derwort*, one of the plaintiffs,
and *Philo F. Barnum*. (*a*)

The cause was submitted to the jury upon the evidence;
and they returned a verdict for the defendant.    The plain-
tiffs thereupon moved for a new trial, for a verdict against
the evidence.

*Dutton* and *E. K. Foster*, in support of the motion, con-
tended, 1. That the plaintiffs had shewn a good cause of
action against the defendant; the principles of law involved
in the case being in their favour, and the evidence adduced
on the trial clearly proving the matters of fact in issue.
First, the power of the court to grant a new trial for a ver-
dict palpably against evidence, where justice has not been
done, is a *salutary* power, and one fully established.    *Bulk-*

(*a*) It may be proper to state here, what has been omitted in the text,
that at the term of the court in *October*, 1850, the defendant appeared, and
moved the court to *discontinue* the suit, on the ground of the settlement and
discharge subsequently pleaded in bar.    The facts alleged in the motion
being denied, by the plaintiffs; the court thereupon made the following
finding: " This court does not find, that the said *Huggins* ever had any au-
thority to settle said suit, or execute the writing set forth in said motion,
except what may be implied from the fact, that he was employed by the
plaintiffs, as their attorney in the suit, and his appearing and acting as such;
and this court does not find any collusion, on the part of the defendant, in
obtaining said writing, or that he had any other knowledge in relation to
the authority of said *Huggins* respecting the settlement of said suit, except
what may be implied from his knowledge that said *Huggins* was the attor-
ney in said suit."    And the cause thereupon was continued.

*ley* v. *Waterman*, 13 *Conn. R.* 328. *Kinne* v. *Kinne* & al. 9 *Conn. R.* 102. 1 *Wash. C. C.* 123. 4 *Wash. C. C.* 32. Secondly, carriers of passengers are liable for the least negligence or want of skill or prudence. *Aston* v. *Heaven,* 2 *Esp. Ca.* 533. *Christie* v. *Griggs,* 2 *Campb.* 79. *Sto. Bail.* 376. *Maury* v. *Tallmadge,* 2 *McLean,* 157. *Hall* v. *Conn. River Steam-boat Co.* 13 *Conn. R.* 320. *Camden & Amboy Rail-road and Transportation Co.* v. *Burke,* 13 *Wend.* 611. Thirdly, in the case of accident, the law *prima facie* implies negligence ; and to shew the contrary, the *onus probandi* lies upon the defendant. *Christie* v. *Griggs,* 2 *Campb.* 79. *Ware* v. *Gay,* 11 *Pick.* 106. *Stokes* v. *Saltonstall,* 13 *Peters,* 181. Fourthly, the driver of a stage-coach is bound to notify passengers before passing a dangerous place. *Dudley* v. *Smith,* 1 *Campb.* 167. *Maury* v. *Tallmadge,* 2 *McLean,* 157. This is true, as a general rule, and was especially so, in this case, as such was the engagement of the driver. Fifthly, if the driver of a stage-coach upon a public road may elect either of two courses, one of which is safe, and the other hazardous ; and he elects the latter ; he is responsible for the injury which ensues. *Mayhew* v. *Boyce,* 1 *Stark. Ca.* 423. Sixthly, the matters of fact in issue, regarding the *negligence* of the driver and the *injury* to the plaintiffs, were clearly proved, so that the verdict is palpably against the evidence. [Here the evidence relating to this part of the case, was minutely examined.]

2. That the plaintiffs have not discharged their right of action. The power of an attorney is confined to the prosecution of the suit in which he is engaged, and the incidents therewith connected ; and he has no power to settle the suit, without express authority. *Vail* v. *Conant,* admr. of *Jackson,* 15 *Verm.* 314. *Penniman* v. *Patchin,* 5 *Verm.* 346. 352. *Lewis,* admx. v. *Gamage,* 1 *Pick.* 347. *Holker* v. *Parker,* 7 *Cranch,* 436. [The evidence on this point was here commented on.]

*C. A. Ingersoll* and *Blackman,* contra, contended, That in this case, the verdict of the jury on both the issues, was in conformity with the evidence in the cause. In relation to the general issue, they contended, 1. That it was not enough that the plaintiff's wife has been *injured,* by the overturning

*New-Haven, July, 1851.*

Derwort & ux. *v.* Loomer.

New-Haven,
July, 1851.

Derwort & ux.
v.
Loomer.

of the defendant's stage. The rule is, that however great an injury the plaintiffs may have sustained, by the oversetting of the defendant's stage, yet if the defendant, so far as human care and human foresight could go, did provide for the plaintiffs a safe conveyance, with a good driver, and properly conducted in the transportation of his passengers, he is not liable. *Christie* v. *Griggs*, 2 *Campb.* 79.

2. That there was no negligence or fault, on the part of the defendant, in placing the iron on the top of the stage, for two reasons. In the first place, it was not the cause of the accident. The stage would have overturned, if the iron had not been on the top of it. But, in the next place, if the stage had been overturned in consequence of the iron being on the top of it, the defendant would not be liable; for that was a proper way of carrying that quantity of iron. The defendant had advertised to carry freight. His stage was a freight stage, as well as a passenger stage. It was usual, safe and prudent, to carry iron.

3. That there was no fault or negligence in the defendant, in taking the number of passengers, that he did take. The stage was not overset in consequence of the number of passengers. And if it had been, the defendant would not be liable; for it was a proper way to carry the number of passengers that were in the stage. It was designed for twelve inside. He had seven grown persons and four children.

4. That there was no negligence or fault in driving on that part of the road where the stage was overturned. It was the usual and only track. There was indeed no other track.

5. That there is no other negligence charged; and there was none, that the defendant could be charged with. For the stage was a good and safe one; there were good horses and kind; there was a skillful driver—none better; and the horses were on a walk, when the accident happened.

The plaintiffs therefore did not make out a case.

6. That in relation to the other issue, the plaintiffs' claim, if they had one originally, has been settled and discharged. In the first place, the plaintiffs did, in point of fact, authorize *Huggins*, their attorney, to settle the suit; and in pursuance of that authority, *Huggins* received the money of the defendant, in satisfaction of the claim, and discharged it.

New-Haven,
July, 1851.
Derwort & ux.
v.
Loomer.

But *Huggins, as attorney*, had *a right* to receive the money which was paid, in satisfaction, and discharge the claim. The demand was not for a *certain* sum. It was to recover a *reasonable* sum. And when the claim is for a reasonable sum, the attorney may receive a reasonable sum, and discharge the demand. And he is to be the judge of what is a reasonable sum. When he receives a reasonable sum, he receives that which he is employed to recover. *Wycoff* v. *Bergen, Coxe,* 214. *McLaine* v. *Bachelor,* 8 *Greenl.* 324. When a claim of this kind is put into his hands, to recover satisfaction for the injury, he can submit to arbitration; (*Gorham* v. *Gale,* 7 *Cowen,* 744. *Holker* & al. v. *Parker,* 7 *Cranch,* 436.) Agree to a reference under a rule of court; (*Cahill* v. *Benn* & al. 6 *Binn.* 99. *Somers* v. *Balabrega,* 1 *Dall.* 164. *Holker* & al. v. *Parker,* 7 *Cranch,* 436. *Talbot* v. *McGee,* 4 *Monroe,* 377.) And upon a state of facts upon which the case is to be decided; (*Pike* v. *Emerson,* 5 *N. Hamp.* 393. *Alton* v. *Gilmanton,* 2 *N. Hamp.* 520. *Doe* d. *Wetherell* v. *Bird,* 7 *Car. & Pa.* 6. (32 *E. C. L.* 415.) And upon the amount for which judgment shall be rendered. *Gorham* v. *Gale,* 7 *Cowen,* 744. *Anon.* 1 *Wend.* 108. He can therefore indirectly agree, upon the sum which shall be paid in satisfaction; and if he can do it indirectly, he can do it directly.

Further, the agreement made between the defendant and *Huggins* in good faith, was a *discontinuance* of the suit; and the plaintiff ought not to have been permitted to bring the cause to trial, after that agreement had been entered into, and it had been filed with the clerk. *Stat.* 63. *Gaillard* & al. v. *Smart,* 6 *Cowen,* 385.

Finally, if the court should be of opinion, that better justice would have been done, if the verdict had been for the plaintiffs, still a new trial will not be granted, unless it appears clearly and palpably, that the verdict was against the evidence in the cause. Where the evidence was contradictory, and its effect depended upon the credibility of the witnesses, the verdict will not be set aside as against evidence, although the preponderance of the evidence, in the opinion of the court, should have been against the verdict. *Bacon* v. *Parker,* 12 *Conn. R.* 213. *Palmer* v. *Hyde,* 4 *Conn. R.* 426. *Lafflin* v. *Pomeroy,* 11 *Conn. R.* 440. *Douglass* v. *Tousey,*

New-Haven,
July, 1851.
———
Derwort & ux,
v.
Loomer.

2 *Wend.* 352.    *Keeler* v. *Fireman's Ins. Co. of Albany,* 3 *Hill,* 251.    *Astor* v. *Union Ins. Co.* 7 *Cowen,* 202.

ELLSWORTH, J.    This is a motion for a new trial, because the verdict is against evidence.

It has been argued before us, as if two issues had been tried to the jury ; one upon the sufficiency of the evidence to support the declaration, and the other, the sufficiency of the evidence to support the plea of accord and satisfaction, and release.

We are of opinion the jury erred, in rendering their verdict for the defendant, on either ground of defence, and so obviously erred, that we shall allow the plaintiffs to present their cause for trial, to another jury.

The court is reluctant, at all times, to set aside the verdict of a jury, for the cause that they have erred in weighing evidence ; nor do the court feel at liberty to do this, where the jury have passed upon a mere question of fact, unless we see, that the verdict is so palpably and manifestly against evidence, as that it is apparent their minds were not open to reason and conviction, or that an improper influence, from some cause or other, was brought to bear on their deliberations.    We do not say that this is that case ; nor that we would now interpose and grant a new trial, did we consider the verdict as involving matters of fact, only.    But it involves more.    We think the jury must have proceeded upon false notions of law ; certainly they did, if they found there had been no fault or negligence, on the part of the defendant, or his agent.    Neglect of duty, or legal negligence, is not, in all cases, a pure question of fact for the jury, but is often mixed up with principles of law, so that negligence becomes a conclusion of law rather than of fact ; or more properly, it becomes a rule of responsibility, which courts, through the verdict, aim to have applied faithfully and uniformly.    Jurors not unfrequently entertain singular notions of the accountability of common carriers and stage proprietors ; and they will, sometimes, pertinaciously follow out those notions, notwithstanding the instructions and efforts of the court to the contrary.

Upon the undisputed facts in this case, we believe there was clear, culpable negligence in the defendant's agent.

Here was a stage-sleigh, loaded within and without, with *New-Haven,*
*July, 1851.*

Derwort & ux.
*v.*
Loomer. passengers, thirteen in number, on narrow double runners, (of course, somewhat unsteady,) passing on a road made smooth and sidling, by constant use. And this place was on the edge of a dangerous gutter, which the driver well knew from his long familiarity with the road, both in summer and winter. The danger was enhanced, by the 418 pounds of iron stowed upon the *top.* Nothing was more probable than that this sleigh would upset, in any place of danger or difficulty. The hind runners slid down the declivity of the worn road into the gutter below, and the stage was upset. It might, under the circumstances, have been expected, and need not be ascribed, to any accidental cause; nothing extraordinary, had happened, and no difficulty existed but what a prudent, careful man could and would have foreseen and avoided. Beyond a question, this stage, for such a load, was greatly overloaded and rendered unmanageable. The place in the road, had become dangerous from the very great use to which it had been subjected, on the day of the accident and the day previous; together with the recent fall of snow. *Why*, we ask, *did the accident happen? Why did the stage upset?* It was broad day; the horses were under entire command; and nothing had given way. Now, while we would not be too rigorous in laying down the degree of attention required from stage proprietors and railroad companies in transporting passengers, we must hold them to the greatest care and watchfulness.

The rule of law on this subject, is fully established, in our own courts and elsewhere, and is not controverted, by the learned counsel, in this case. The principle is, that in the case of common carriers of passengers, *the highest degree of care which a reasonable man* would use, is required. This rule applies alike to the character of the vehicle, the horses and harness, the skill and sobriety of the driver, and to the manner of conducting the stage, under every emergency or difficulty. The driver must, of course, be attentive and watchful. He has, for the time being, committed to his trust the safety and lives of people, old and young, women and children, locked up, as it were, in the coach or rail-car, ignorant, helpless, and having no eyes, or ears, or power to guard against danger, and who look to him for safety in their

*New-Haven,*
*July, 1851.*

*Derwort & ux.*
*v.*
*Loomer.*

transportation. The contract to carry passengers differs, it is true, from a contract to carry freight; but in both cases, the rule is rigorous and imperative: in the latter, the carrier is answerable at all events, except for the act of God and the public enemy; while, in the former, the most perfect care of prudent and cautious men is demanded and required. The stage-owner does not *warrant* the safety of passengers; yet his undertaking and liability as to them, go to this extent; that he, or his agent, shall possess competent skill, and that, as far as human foresight and care can reasonably go, he will transport them safely. He is not liable for injuries happening to passengers, from sheer accident, or misfortune, where there is no negligence or fault, and where no want of caution, foresight or judgment would prevent the injury. But he is liable for the smallest negligence in himself or his driver. *Hall* v. *Conn. River Steam-boat Co.* 13 *Conn. R.* 320. *Stokes* v. *Saltonstall,* 13 *Pet. R.* 191.

The defendant relies upon his proof, that the stage was not overloaded; that thirteen passengers with their baggage, and with freight, to the amount of 418 pounds, placed on the top, is not unreasonable or excessive. He says, his sleigh was strong, his horses kind, his driver skillful and sober; and that this is enough to screen him from liability. Now, all this may be true; and yet there may have been, and we think there was, great and culpable negligence. Obviously, the place had become unsafe and perilous. If the sleigh slipped on the margin of the gutter, it was sure to upset, and if it did upset, the weight of the iron was likely to produce the very result we discover, *i. e.*, pinning down Mrs. *Derwort,* with her broken arm, until the iron could be removed and she rescued from her alarming condition. We see not why the driver could not have gone, as in fact others did, further *East* or further *West*. If necessary, he should have stopped the horses, and descended from his seat, and examined the difficulties in the way. He could have beaten down the drift of snow, if really blocking the path, and he could not otherwise have sufficiently hugged the *West* bank, or he should have examined and gone, as he certainly might, in the gutter on the *East;* and if he could not have done either, he should have given the passengers notice of the danger that was apparent, that they might have left the sleigh,

*New-Haven,*
July, 1851.

Derwort & ux.
*v.*
Loomer.

and thus saved themselves from the imminent danger of passing upon the brink of this gutter.   This carefulness might have occasioned some delay and trouble to the driver ; but it is no more than what a reasonable man would have done, on the occasion ; and if done, it would have saved a world of suffering, and an injury to Mrs. *Derwort*, which makes her helpless and dependent, through life.

It is no apology that freight is put upon these stages, as in this case, under public or any other notices.   The liability continues the same.   Nor is it any apology, that stage proprietors and their drivers are accustomed to load down their stages with passengers and freight, notwithstanding the state of the roads, until nothing more can be crowded within or accumulated on the top.   It is high time that the law on this subject should be better understood and regarded ; and that such unpardonable liberties should cease to be taken, by persons who stipulate to carry passengers safely and without exposure.   Converting stage-coaches into freight wagons, to transport iron, and well nigh every thing else, is the last innovation upon the rights of the travelling community, and it is one which we do not intend to sanction or countenance.

As to the compromise and release by Mr. *Huggins*, for the sum of 350 dollars, paid to him by the defendant, if that was the ground of the verdict, we fear the jury gave it an importance in their deliberations to which it is not entitled.   If indeed the defendant was frank and fair in seeking the plaintiffs' *lawyer* at all, rather than the plaintiffs themselves, for the purpose of effecting a compromise, and has properly settled the case, by paying said lawyer the stipulated satisfaction, it is hard, we admit, that he should be obliged to pay it again ; but the loss must fall upon one of these parties ; and we know of no rule, but what the law declares, to say which shall bear it.

It cannot be contended from the evidence, that Mr. *Huggins* had any specific authority to make a settlement and release.   He was, it is true, their attorney, in court, to conduct the cause to a final judgment, ; but this gave him no authority out of court to put an end to it, at his election, upon terms satisfactory to himself.   It is true *Huggins* swears, that he was especially authorised to settle with the

defendant, and discharge the suit; and this is substantially all the evidence the defendant adduces to make out such authority. On the other hand, Mr. *Derwort* as distinctly denies it, and insists, that he gave no such authority. We do not feel at liberty to give credit to the testimony of Mr. *Huggins;* for his own narration of the matter, and his admitted deceptive conduct and declarations, destroy the credibility of his testimony. The transaction, viewed most favourably for Mr. *Huggins*, reflects no honour upon his fidelity and integrity; but rather, it would seem, that under a momentary pressure, he has abused his client's confidence, and sullied the fame of a profession which lends no countenance to deception and dishonesty.

But it is said, Mr. *Huggins* is to be taken to have authority, because he was the plaintiffs' attorney in court. No case has been cited which sustains this position. An attorney is the representative of his client in court; he is held to be authorised to commence and conduct that cause to final judgment and execution, and to do whatever is usual and necessary to bring about that end, through all the forms and stages of legal proceedings. Further; there are cases where it is held, that he may go beyond this, as if the execution is returned unsatisfied: it has been held, he may proceed to collect the debt, by instituting a new suit on the judgment. In all cases, he may give directions to the sheriff in levying the execution, and he may receive the money from the sheriff, when collected; but he cannot receive a part of the execution and discharge the debtor; nor can he receive any thing in payment but money, nor the note of the defendant, and much less can he compromise the action, or the claim, before judgment, for what may be satisfactory to himself. We refrain from going into the various distinctions given in the books on this subject. The general question of the authority of an attorney, has often been discussed in courts of justice, and many cases are to be found in which distinctions, of more or less importance, have been taken. But in none of them is it held, that an attorney, who is clothed with no other authority than what is incident to his retainer, can compromise and discharge the claim. We find no reported case where the principles are discussed so elaborately and satisfactorily, as by Ch. J. *Hosmer*, in *Brackett* v. *Norton*, 4

Conn. R. 517.   To those who wish to prosecute this enquiry *New-Haven,*
July, 1851. further, we refer to *Smith* v. *Bossard,* 2 *McCord's Ch. R.* 409.   *Gaillard* v. *Smart,* 6 *Cowen,* 385.   *Cheever* v. *Mer-* Harper & ux.
*v.*
Phelps & ux. *rick,* 2 *N. Hamp.* 376.   *Lewis,* admx. v. *Gamage,* 1 *Pick.* 347.   *Huston* v. *Mitchell,* 14 *S. & R.* 307.   *Kellogg* v. *Gilbert,* 10 *Johns. R.* 220.   *Commissioners of Accounts* v. *Rose* & al. 1 *Desaus.* 469.   *Gorham* v. *Gale,* 7 *Cowen,* 739.   *Richardson* v. *Talbot,* 2 *Bibb,* 382.   *Gray* v. *Wass,* 1 *Greenl.* 257.   *Holker* v. *Parker,* 7 *Cranch,* 436.   *Lambert* v. *Sanford,* 2 *Blackf.* 137.   *Herbert* v. *Alexander,* 2 *Call,* 498. *Vail* v. *Conant,* 15 *Verm.* 314.   *Sharp* v. *Grey,* 9 *Bing.* 457. (23 *E. C. L.* 331.)

The other Judges were of the same opinion.

New trial advised.