JAMES H. YERKES, Respondent, *v.* KEOKUK NORTHERN LINE PACKET COMPANY, Appellant.

**May 27, 1879.**

1. The breaking of a paddle-wheel of a steamboat, by which a passenger was injured, raises a presumption of negligence on the part of the carrier.

2. Carriers are bound to exercise the highest degree of care which a prudent man would use, and to adopt all precautions which have been practically tested and are known to be of value; but are not bound to have machinery constructed of the "most perfect material," and in the "most perfect manner which care and diligence can suggest," consistent with the construction and operation of their boats.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

GLOVER & SHEPLEY, for appellant: Under the facts in this case the plaintiff was not entitled to recover, there being no evidence of negligence. —*Curtis* v. *Railroad Co.*, 18 N. Y. 534; *Christie* v. *Griggs*, 2 Camp. 79; *Stokes* v. *Salstonstall*, 13 Pet. 192; *Carpue* v. *Railway Co.*, 5 Ad. & E. (N. S.) 747; *Laing* v. *Colder*, 8 Barb. 479; *Deyo* v. *Railroad Co.*, 34 N. Y. 9; *Brehm* v. *Railroad Co.*, 34 Barb. 256; 12 N. Y. 236. The burden of proving negligence is on the plaintiff. — *Smith* v. *Railroad Co.*, 37 Mo. 286; *Nolan* v. *Shickle*, 3 Mo. App. 300. Where the plaintiff's evidence shows that the accident was the result

of internal defects not discernible, or deficiencies unavoidable by the exercise of the utmost care and diligence, it fails to furnish any proof whatever of negligence, and there is no presumption of law or fact concerning it. — *Ingalls* v. *Bills*, 9 Metc. 1; 2 Greenl. on Ev., sect. 222. A railway company is bound to use the best precautions in known practical use, but not every possible precaution which the highest scientific skill, according to speculative evidence, might have suggested. — *Steinwig* v. *Railroad Co.*, 43 N. Y. 123; *Fuller* v. *Talbot*, 23 Ill. 357.

HARRIS & JOY, for respondent: An injury to a passenger occasioned by the breaking of part of the machinery or appliances of the common carrier makes a *primá facie* case of negligence against the carrier sufficient to shift the burden of proof. — *Higgins* v. *Railways Co.*, 36 Mo. 432; 1 Redf. on Rys. 559; *Dunim* v. *Railroad Co.*, 5 L. T. (N. s.) 682; *Christie* v. *Griggs*, 2 Camp. 79. The carrier is bound not only to extraordinary care in the management of the conveyance, but also in the construction and subsidiary arrangements. — *McElroy* v. *Railroad Co.*, 4 Cush. 400; *Knight* v. *Railroad Co.*, 56 Me. 243; *Nicholson* v. *Railway Co.*, 3 Hurl. & Colt. 534; *Ford* v. *Railway Co.*, 2 Fost. & Fin. 732; *Philadelphia & Reading R. Co.* v. *Derby*, 14 How. 486; *Edwards* v. *Lord*, 49 Me. 279.

LEWIS, P. J., delivered the opinion of the court.

The defendant was a common carrier engaged in the business of transporting passengers and freight, for hire, in steamboats on the Mississippi River. Plaintiff was a passenger on board of the Minnesota, one of defendant's boats, and, while she was running, was seated in the water-closet directly in front of the larboard wheel, with his back toward the wheel. There was a thin partition, or bulkhead, between the wheel and the water-closet. A sudden breakage occurred in the periphery of the revolving wheel; its

fragments were dashed through the partition, and the plaintiff was struck upon the back with a force that drove him through the closed door of the closet and into the gangway outside. His bodily injuries were so severe as to require his confinement under surgical treatment for several weeks, and as to leave his system in a diseased and enfeebled condition, which, according to the testimony of medical experts, is likely to continue through the plaintiff's life. Plaintiff obtained a verdict and judgment in this suit, for $3,000 damages.

The defendant complains that the court erred in overruling the demurrer to the evidence. It is insisted that there was no evidence whatever of negligence on the part of defendant or its employees. Counsel present a careful review of the cases in which it has been held that the fact of the injury to a passenger raises a presumption of negligence in the carrier, and shifts the burden of proof from the plaintiff to the defendant. The conclusion is reached that the presumption arises, not from the injury alone, but from the circumstances which caused it, and because, in the language of Ruggles, J., "it generally happens that the same evidence which proves the injury done, proves also the defendant's negligence, or shows circumstances from which a strong presumption of negligence arises, and which casts on the defendant the burden of disproving it." *Holbrook* v. *Railroad Co.*, 2 Kern. 236.

The doctrine is correct, but the difficulty lies in the application. What are the "circumstances" from which the strong presumption of negligence arises? In all the cases reviewed, they are found to consist of defects or malperformance in some of the means or agencies used by the carrier for effecting the transportation. The displacement of a railroad switch, the spreading or breaking of the rails, the flying off of the wheel of a coach, the intoxication of a driver, the breach in an embankment, resulting from heavy rains — in short, any deficiency in aids or materials, however

recent in origin, or even if simultaneous in appearance with the accident, has been found sufficient to shift the burden of proof to the defendant carrier. *Christie* v. *Griggs*, 2 Camp. 79 ; *Stokes* v. *Saltonstall*, 13 Pet. 192 ; *Carpue* v. *Railroad Co.*, 5 Ad. & E. (N. S.) 747 ; *Laing* v. *Colder*, 8 Barr, 479 ; *Curtis* v. *Railroad Co.*, 18 N. Y. 534. An example suggested in *Holbrook* v. *Railroad Company*, 12 N. Y. 236, clearly illustrates the difference between two classes of cases, thus : " A passenger's leg is broken while on his passage in a railroad car. This mere fact is no evidence of negligence on the part of the carrier, until something further be shown. If the witness who swears to the injury testifies also that it was caused by a coach in a collision with another train of cars belonging to the same carriers, the presumption of negligence immediately arises ; not, however, from the fact that the leg was broken, but from the circumstances attending the fact. On the other hand, if the witness who proves the injury swears that at the moment when it happened he heard the report of a gun outside of the car, and found a bullet in the fractured limb, the presumption would be against the negligence of the carrier. It is incorrect, therefore, to say that the negligence of the carrier is to be presumed from the mere fact that any injury has been done to the plaintiff. The presumption arises from the cause of the injury, or from other circumstances attending it, and not from the injury itself."

Here we have a test, easy of application, in the distinction between causes and circumstances developed in and from the vehicle, or any aid or apparatus used by the carrier, and causes of injury which approach from something outside, and wholly independent of the carrier's means of operating. Such a test, in the present instance, clearly establishes a *prima facie* case against the defendant. The cause of the plaintiff's injury is traced to nothing beyond the breaking of the paddle-wheel. This was sufficient for the plaintiff. It raised a presumption of negligence on the part of those

whose duty it was to see that everything was in order, and " free from any defect which the utmost vigilance, aided by the highest skill, could discover and prevent." *Curtis* v. *Railroad Co.*, 18 N. Y. 534. It was for the defendant to show, if it could, that the breaking of the wheel was caused by some outside influence beyond the defendant's means of prevention or control, or that it did not in fact result from defective construction, or from any lack of proper vigilance and skill on the part of defendant's agents and employees. The case, therefore, was properly submitted to the jury. There is in these views no departure from the opinion in *Harvey* v. *Railroad Company*, 6 Mo. App. 585. In that case it was not shown that any breakage or defect existed in the cars, track, or machinery at or before the accident, or that the injury was caused by any departure from the usual daily and inseparable incidents of railway transportation.

The instructions given for the plaintiff were not objectionable for their omission of a reference to contributory negligence on the part of the plaintiff. Nothing in the pleadings or in the proofs furnished a basis for any suggestion of negligence in the plaintiff contributing to the original mishap. The allegation in the answer that " such injuries as plaintiff did suffer were very much increased and aggravated by plaintiff's negligence and carelessness subsequent to the accident," might, if sustained, have had an influence in mitigating the damages. But the instructions given limited the finding of the jury to such damages of the plaintiff as were " caused by the accident, and resulting from his injuries then and thereby received." If the defendant desired a more specific warning of the jury against assessing damages arising from other causes, it could have asked for an instruction to that effect. As to the claim on account of medical and other expenses paid by the defendant, it is not set up in the answer, and it was not incumbent on the court to recognize it in the instructions, — at least, without a

request to that effect from defendant. The third instruction for the plaintiff was as follows : —

"To entitle the plaintiff to recover under the foregoing instruction, it is not necessary for him to prove actual want of care or negligence on the part of the company. It is only necessary to show that a part of the machinery or appliances of the boat gave way and broke, and that by such breaking or giving way the plaintiff was injured. The law then presumes that the defendant was negligent, unless the defendant shows in defence that he had used every possible care and diligence in the construction of the part of the boat referred to (to wit, the larboard wheel), and had used the most perfect material, and had constructed the wheel in the most perfect manner which care and diligence can suggest, consistent with the business of building, repairing, and operating such vessels or steamboats."

What is probably meant by the opening sentence in the instruction would have been more clearly expressed by saying that it was not necessary for the plaintiff to show negligence in the defendant by direct proof of the fact. "Negligence" and "actual negligence" are the same thing. By whichever term it be designated, it must be proved, either directly or inferentially. If inferentially proved, the *prima facie* case is made. This, as the instruction doubtless intended to say, could be accomplished by showing that "a part of the machinery or appliance of the boat gave way and broke, and that by such breaking or giving way the plaintiff was injured. The law then presumes that the defendant was negligent," and so forth, as the instruction proceeds to explain. In other words, the plaintiff then has by indirect or inferential, but sufficient proof, shown "actual want of care, or negligence, on the part of the company." The presumption thus raised may, however, be removed by appropriate testimony for the defence. Thus understood, the faultiness in expression might prove harmless. The jury might infer from what

follows that the plaintiff's advantage, howsoever resulting from the proof of the breaking and giving way of the wheel, could be destroyed by evidence that the defendant " had used every possible care and diligence in the construction," and so forth. So far the instruction might be tolerated, notwithstanding its patent defects. But a fatal error supervenes.

When a jury are told that the defendant was bound to use the " most perfect " material, and to construct its wheel " in the most perfect manner which care and diligence can suggest," they may feel justified in requiring a degree of excellence that will not admit even the possibility of casualty. Perfection in material and construction implies an impossibility that either could be better. In order to reach this condition, nothing would suffice short of the highest achievements of inventive skill, and the most extraordinary products of manufacturing art. If after-acquired wisdom can suggest any possible precaution that might have prevented the accident, then either the material or the construction was not perfect, for lack of that precaution. While it is true that the public carrier is held to a greater degree of care and vigilance than is required of the private owner of dangerous machinery in his relations with employees or visitors, yet the courts have never demanded of him that superexcellence in all things which would apply to his arrangements the double superlative, " most perfect." He must use the utmost care and skill of very cautious persons. He must adopt all the precautions which have been practically tested and are known to be of value. He must use the highest degree of care which a reasonable and prudent man would use. *Haderlein* v. *Railroad Co.*, 3 Mo. App. 600 ; *Maverick* v. *Railroad Co.*, 36 N. Y. 378 ; *Caldwell* v. *Steamboat Co.*, 47 N. Y. 282 ; *Dermott* v. *Lowner*, 21 Conn. 245. Such is the general scope of the law, as recognized by the authorities. It does not quite reach the exactions embodied in the instruction before us. The concluding

qualification — " consistent with the business of building, repairing, and operating such vessels or steamboats " — is too vague and indeterminate to neutralize the evil that it follows. For error in the giving of this instruction, the judgment must be reversed and the cause remanded. All the judges concur.