*1111 The opinion of the court was delivered by
Breaux, J.
The plaintiff claims damages for personal injuries sustained while on a special or private car by invitation of the general agent of the defendant.
He was struck in the light eye by the bell cord of the train. It, the contact with the bell cord, destroyed and tore away portion of the corner of his right eye, and caused secondary iritis, with partial occlusion of the pupil.
Plaintiff furthers avers that the injury is permanent, and renders it impossible for him to have accurate vision with the impaired eye.
The defendant denies all liability, and denies all negligence charged, and alleges that the plaintiff did not pay any fare or passage money on defendant’s train on the day of the accident, and further alleges that the special car on which the plaintiff was, on the occasion in question, was not the property of the defendant company, but it was a car borrowed from the superintendent of the Illinois Central Railroad Company by the Pontchartrain Levee Board, for the purpose of inspecting levees between New Orleans and Baton Rouge; that it was, to the knowledge of the defendant, that it was intended to be used only by railway officers.
The defendant further answers that if plaintiff’s eye was injured by contact with the bell cord, it was directly the result of plaintiff’s negligence.
The defendant also invoked the condition upon which a free pass was issued to plaintiff; that it was to be held harmless against accidents.
The evidence shows that plaintiff, who is a civil engineer, and a member of the Board of State Engineers, and in that capacity an ad-visor of the Pontchartrain Levee Board, was requested by the president of that board, who is also general agent of the defendant company, to accompany the president and other members of that board to examine the line of levees in that district in order that preparation might be made to hold them against the threatening waters.
That the president of the board and the general manager of the company had arranged with the superintendent of the Illinois Central Railroad Company for the use of his car by the inspectors of the levee; that this ear was attached to the train of the defendant at the time of the. accident.
It seems that this special car had been switched off the track *1112 while an inspection was being made by the president of the board, and those who were with him on the inspecting tour.
In the afternoon, at the request of the general agent of the defendant company (who was, as we have seen, also an officer of the Levee District), an accommodation train of cars of the defendant company coupled on to the special car (at the rear) and thereafter formed part of defendant’s train of cars operated under its management.
In order to complete the coupling of the special car to the train, it was necessary to connect the bell cord of the train with the bell cord of the special car. The flagman passed the bell cord through the eyelets (attached to the ceiling of the car) in order to connect this cord to that of the coach in front. While the flagman was passing it over the platform to the front car, the plaintiff testifies that he stooped out of the way of the rope, which was then, he says, touching the floor, and took a seat in one of the corners of the car in the rear, entirely out of the way of the bell rope, as he thought.
The bell cord was hanging loosely in the special ear, within a few feet of the floor, when the flagman, gathering in the slack of the cord, violently drew the cord, and plaintiff was struck in the right eye, inflicting the injury of which he complains.
It is shown that the eye sight of plaintiff is impaired; that his vision in that eye is about one-sixth of what it should be in its normal condition; his left eye was injured by another accident several years ago.
The case was tried by jury and a verdict was rendered in favor of the plaintiff in the sum of five thousand two hundred and fifty dollars, with legal interest from December 14, 1894 (the date of the judgment), and cost.
From the verdict and judgment of the court the defendant appeals.
It is manifest that plaintiff sustained the injury on defendant’s train. It was under its management and control, and it was responsible for the negligence of the employees. Such being our conclusion on that point, it devolves upon us to determine whether or not plaintiff was a passenger by invitation or a passenger riding on a free pass, containing printed stipulations to hold the carrier harmless against the negligence of his servants.
In order to place the facts upon this question properly before us, *1113 we return to the statement of facts, and from the evidence of defendant’s general agent we extract:
Q. Mr. Thompson then accompanied you by your request in this special car, and he would not, under any circumstances, have been required to pay any fare?
A. No, he would not; for the reason that the railroad company gave transportation to all the members of the levee board and all connected with it, the engineer and secretary.
Q. Suppose he had no such ticket or pass, would he have been required to have paid fare on that trip ?
A. No, he would not.
Q. According to that, he would not have been required to pay the fare, because you had arranged for the hauling of the car?
A. Not as long as he remained in that car; but if he had gone on any other portion of the train, he would have been compelled to show his pass or to pay his fare, if requested.
From the foregoing, we conclude that plaintiff was a passenger by invitation, without contract or stipulation.
The free pass has no place in the controversy. No offer was made to use it, and he was under no obligation to show a pass or pay for a ticket.
We will not assume that a stipulation was in force, and give it effect in the absence of evidence that the passenger was riding on such a pass.
From the fact that a person has a free pass, it will not be assumed, in the face of the request made here, of the plaintiff to ride in the officers’ car, where fare is not charged, that he was using it on the occasion in question.
As there was no contract of carriage between the plaintiff and the defendant, can the carrier be held responsible for accidents caused by the negligence of servants?
That question was discussed at some length in a well considered case in the court of last resort in this country. Philadelphia & Reading R. R. Co. vs. Derby, 14 Howard (U. S.), 291, 292.
The principle that it makes no difference to the obligation to perform a service well after it is once entered on, whether it is performed gratuitously or not, is announced in that case, and that principle was followed in the case of Steamboat New World vs. King, 16 H. 260, 261, in which it was urged that the master had no power to impose any *1114 obligation on the carrier by receiving a passenger without compensation.
The degree of negligence for which the carrier may be responsible to such passengers was discussed without further absolute conclusion than that it is necessarily a question of fact. See authority last cited, supra.
The plaintiff was lawfully on the train. The authority of the general agent, under prevailing custom, gave him power to act and bind the company.
See also Randell and Wife vs. N. O. & N. E. R. R. Co. 45 An. 779, 787.
The evidence shows that the passenger was not riding on the train by invitation for mere pleasure.
At the moment he sustained the injury he and the general agent, Mr. Spellman, who was also president of the board, were in the act of examining charts and profiles of levees with the object of directing such repairs of these levees as were needful at the time. The defendant had an interest in these repairs; about eighty-five miles of its road are protected by these levees.
This brings us to the issue; defendant’s negligence vel non.
The injury might have been provided against by due care and proper diligence on the part of the servant.
Having failed in this duty liability attaches for the consequences.
The proof is that the rope was pulled violently and without warning. There was no necessity of exerting great force in pulling up the taut.
It was the duty of the flagman to give warning to the passengers in a car, with interior arrangement excluding his sight from the rear to the front platform. Witnesses refer to the violent pulling of that rope as dangerous. The consequence in this case shows that it was very dangerous.
The Louisiana Code defines gross fault as that which proceeds from inexcusable negligence or ignorance. Art. 8556, No. 18.
We are of opinion that the act of the servant for which the master is responsible is embraced within the terms of that definition.
In regard to passengers the law of common carriers exacts the highest degree of carefulness and diligence.
The defendant, through counsel, argues that plaintiff, by want of ordinary care, contributed to his injury and is therefore barred from recovery.
*1115 The evidence does not disclose that the injury was due to plaintiff’s fault or want of care.
The essential element of contributory negligence on the part of a passenger injured by an accident is his disregard of some risk which he might fairly have anticipated. Buswell, Law of Personal Injuries, 285.
A passenger is not put upon his inquiry, for he was not bound to anticipate negligence on the part of the defendant’s employee. He did not violate any rule, nor did he fail to comply with any notice, for none was given. He was not in a place not intended for a passenger.
The defendant’s flagman, by the exercise of proper care, might have avoided the accident that plaintiff did not foresee.
“ It is well settled that the passenger who, voluntarily and unnecessarily places himself in a position of danger,' can not hold the railway responsible for injuries of which his position is the efficient cause.” Patterson’s Railway Accident Law, 282, 283.
The record does not disclose that the passenger voluntarily and unnecessarily placed himself in a position of danger.
The only remaining question to be considered is the amount of the damages.
The oculists who testified differ somewhat as to the extent of the injury to the eye.
One of them testifies that, in his opinion, the iris is not substantially injured, and that by surgical operation ic is possible to remove to a considerable extent the defect in plaintiff’s vision. The diagnosis of the other oculist shows a condition less favorable to improvement.
Each agree in stating that the vision of the wounded eye would be greatly improved by the operation of “iridectomy.”
The fact remains that, viewed in the most favorable light, the eye will never be restored to its normal condition.
After a careful examination of the evidence, and after having reviewed the authorities regarding the quantum of damages, we must reduce the amount of the verdict so that it may be in line as to the amount with prior decrees.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount from five thou *1116 sand two hundred and fifty dollars to two thousand five hundred dollars; as amended the judgment is affirmed at appellee’s costs.