TAILLON, RESPONDENT, v. MEARS ET AL., APPELLANTS.

(No. 1,693.)

(Submitted October 19, 1903.   Decided November 28, 1903.)

*Carriers of Persons for Hire—Injuries to Passengers—Acts of Servant—Scope of Employment—Liability of Master—Degree of Care—Instructions—Burden of Proof.*

1.  In an action for injuries by a passenger against a carrier, where the complaint alleges that the injury was the (or a) proximate result of the act of the plaintiff, the burden is on plaintiff to prove actionable negligence on the part of defendant, and want of contributory negligence.
2.  A carrier of persons for hire is liable for injuries to a passenger caused by the negligent acts of his servant, even though the acts complained of were not within the scope of the servant's employment.
3.  A carrier of persons for hire is responsible for the acts of his servant committed to a passenger, no matter how wrongful, willful, or even malicious they may be.
4.  In an action for injuries to a passenger, it was error to instruct that the carrier covenants that he will insure the safe carriage of passengers, but the court should have charged, on request of defendant, that, while the carrier is charged with the highest degree of care, he is not an insurer of the personal safety of his passengers.
5.  In an action against the proprietor of a stagecoach for injuries to one while a passenger, an instruction that such proprietor covenants that he would insure the safe carriage of passengers by the exercise of extraordinary diligence, and was responsible for any neglect, was error, in that it excluded from the jury the inquiry whether or not the runaway which resulted in the injury was accidental, and could have been avoided by the exercise of the utmost care.
6.  In an action against a stagecoach proprietor for injuries to one while a passenger, it was error to refuse to instruct that, unless the negligent act

complained of was the direct and proximate cause of the runaway which resulted in the injury, plaintiff could not recover.

*Appeal from District Court, Fergus County; Dudley Du Bose, Judge.*

ACTION by Dumas Taillon against J. L. Mears and the Judith Stage Company. From an order denying a new trial, defendants appeal. Reversed.

*Messrs. Cort & Worden,* and *Mr. C. B. Nolan,* for Appellants.

The master is not liable for the acts of the servant which are not done in the course of his employment. (*Walker* v. *H. & St. J. Ry. Co.,* 121 Mo. 584; Shearman & Redfield on Negligence, Sec. 148; *Walton* v. *N. Y. Cent. Sleeping Car Co.,* 139 Mass. 556; *Smith* v. *Spitz,* 156 Mass. 319; *Driscoll* v. *Scanlon,* 165 Mass. 348; *Searle* v. *Parke,* 34 Atl. 744; *Smith* v. *N. Y. Cent. Ry. Co.,* 78 Hun. 524; *Wyllie* v. *Palmer,* 63 Hun. 8; *Brunner* v. *Am. Tel. Co.,* 151 Pa. St. 447; *Aycrigg* v. *N. Y. & Erie R. Co.,* 30 N. J. 460; *Adams* v. *Cast,* 62 Md. 264; *Mayer* v. *Thompson, etc. Building Co.,* 104 Ala. 611; *Cincinnati, etc. R. Co.* v. *Carper,* 112 Ind. 26; *Keating* v. *Mich. Cent. R. Co.,* 97 Mich. 154; *Wiltse* v. *State Bridge Co.,* 63 Mich. 639; *Yates* v. *Squires,* 10 Iowa, 26; *Western Tel. Co.* v. *Mullins,* 44 Neb. 732; *Dawkins* v. *Gulf, etc. R. Co.,* 77 Tex. 232; *International, etc.* v. *Cooper,* 88 Tex.; *Pittsburg W. & C. R. Co.* v. *Mauser,* 21 Ohio St. 421; *C. B. & Q. R. Co.* v. *Epperson,* 26 Ill. App. 79.)

It is not sufficient to raise a presumption of negligence on the part of the carrier where an injury is suffered by a passenger while on his journey without any evidence connecting the carrier with its cause. (Thompson on Trials, Sec. 1690; *Dennis* v. *Pittsburg, etc. R. Co.,* 165 Pa. St. 624; *Donovan* v. *Hartford R. Co.,* 65 Conn. 201; *Yarnell* v. *Kan. City, etc. R. Co.,* 113 Mo. 570; *McDonald* v. *Montgomery R. Co.,* 110 Ala. 161; *Hawkins* v. *Front St. R. Co.,* 3 Wash. St. 592; *Thomas* v. *Phil.*

*etc. R. Co.,* 148 Pa. St. 180 ; *Pa. R. Co.* v. *McKinney,* 124 Pa. St. 462.)

The act of negligence complained of must be the proximate cause of the injury, and the court should have so instructed the jury as requested by the defendant. (Shearman & Redfield on Negligence (5th Ed.), Sec. 25 ; Thompson on Trials, Sec. 1676 ; *Davis* v. *Chicago, etc. R. Co.,* 64 Wis. 326.)

If the injury complained of was due to accident into which no element of negligence on the part of the defendant entered, no liability existed and the jury should have been so instructed. (*Houston & R. Co.* v. *Garbell,* 49 Tex. 576.)

The record shows that the plaintiff was acquainted with the road used by the stage line and that the portion of it where the runaway occurred was exceedingly dangerous. Knowing this, he felt that a great risk was incurred in traveling on the stage coach with the horse being led as he was. If the risk incurred in making the journey was imminent he was not at liberty to take his chances, and for any injury that he might sustain under those circumstances he cannot recover. (*Cassidy* v. *Main Cent. R. Co.,* 76 Mass. 488 ; Shearman & Redfield on Negligence, Sec. 92.)

*Mr. R. Von Tobel,* and *Mr. Lewis Penwell,* for Respondent.

The question of negligence was for the jury. (*Ryan* v. *Gilmer,* 2 Mont. 517 ; *Tully* v. *P. W. & B. R. R. Co.,* 82 Am. St. Rep. 425 ; *W. C. S. R. R. Co.* v. *Linderman,* 79 Am. St. Rep. 231 ; *Reddington* v. *Postal Tel. Co.,* 107 Cal. 317.)

It must be taken as true that it was negligent to lead the extra horse in the manner stated, as there was no attempt on the part of appellant to prove that it was not so. (*Fairchild* v. *Cal. Stage Co.,* 13 Cal. 599 ; *Steele* v. *S. Ry. Co.,* 74 Am. St. Rep. 756.)

The respondent having shown that he was a passenger on appellant's coach, and that he was injured in an accident caused by the act of appellant's servant, while engaged in the employment of his master, the case was properly sent to the jury. It

devolved upon appellant to show that the act complained of was done by the servant outside of his employment. (*Bush* v. *Barnett,* 96 Cal. 202; *Boyce* v. *Cal. Stage Co.,* 25 Cal. 460; *Treadwell* v. *Whittier,* 80 Cal. 574.)

So far as any fact of which respondent could reasonably have been expected to have knowledge, the appellant ordered his servant, Murphy, and the stock tender, to take the horse in the manner he was taken. The facts connected with the taking of the horse were peculiarly within the knowledge of appellant, and equally beyond the knowledge of respondent, thus entailing upon appellant the duty of proving the absence of negligence on his part. (*Fairchild* v. *Cal. Stage Co., supra;* Thomp. Carr. Pass. 211.)

There is nothing in the evidence to warrant an instruction upon the question of "unavoidable casualty." If appellant claims that the case comes within the rules of law applicable to that class of accidents, it was incumbent upon him to show that such was the case. (*Bush* v. *Barnett, supra; Boyce* v. *Cal. Stage Co., supra; Lawrence* v. *Green,* 70 Cal. 417; *Treadwell* v. *Whittier, supra.*)

Contributory negligence, with few exceptions, is matter of defense. It is matter of defense, except when the proximate cause of the injury complained of is the act relied upon as constituting the contributory negligence, such as the jumping from the coach by the respondent in this case. Any more remote act is matter of defense, and should be pleaded in the answer. (*Higley* v. *Gilmer et al.,* 3 Mont. 90; *Jamison* v. *S. J. & S. C. R. R. Co.,* 55 Cal. 593; *Pullman P. C. Co.* v. *Adams,* 74 Am. St. Rep. 53; *Flannegan* v. *Chesapeake, etc. R. R. Co.,* 52 Am. St. Rep. 896; *L. & N. R. R. Co.* v. *Markee,* 49 Am. St. Rep. 21; *The R. R. Co.* v. *Gladwin,* 15 Wall. 401.)

The phrase, "in the course of his employment," as applied to a servant's acts for which it is attempted to hold the principal responsible, does not apply only to such acts as the servant has express direction to perform, or such only as he may be presumed to have authority to perform. It means anything which

the servant does in the course of his employment, even though it be an act which he would probably be forbidden to do, were the principal acquainted with all the facts; it applies to any act which the servant may reasonably be deemed to have either express or implied authority to do, in the line of his employment. (*Croaker* v. *C. & N. W. Ry. Co.,* 17 Am. Rep. 504; *Garretze* v. *Duenckel,* 11 Am. Rep. 405; *Eckert* v. *St. L. Trans. Co.,* 2 Mo. App. 36; *N. & C. R. R. Co.* v. *Starnes,* 24 Am. Rep. 296; Redfield on Railways, 511, 513; *Bergman* v. *Hendrickson,* 80 Am. St. Rep. 47; *Ware* v. *B. & L. Canal Co.,* 35 Am. Dec. 189.)

A carrier is liable for the want of competent skill, care and diligence of its servants, to the same extent as for a lack of proper appliances, etc. (*Memphis & O. R. P. Co.* v. *McCool,* 43 Am. Rep. 71.)

When a principal is responsible for a duty, and he delegates it to an agent, if the agent fail to perform it, it is immaterial whether the failure be accidental or willful, the contract of the principal is broken. (*Croaker* v. *C. & N. W. R. Co.,* 17 Am. Rep. 504.)

Respondent's continuing his journey was not the proximate cause of his injury. (*B. G. & B. Ditch Co.* v. *Morrow,* 80 Am. St. Rep. 955; *T. & F. S. P. R. R. Co.* v. *Boudrou,* 37 Am. Rep. 707; *Kline* v. *C. P. R. R. Co.,* 37 Cal. 400; *Fernandes* v. *S. C. Ry. Co.,* 52 Cal. 45; *Meeks* v. *S. P. R. R. Co.,* 56 Cal. 513; *Filer* v. *N. Y. C. R. R. Co.,* 10 Am. Rep. 327; *Hoffman* v. *King,* 73 Am. St. Rep. 715; *Hollenback* v. *Dingwell,* 16 Mont. 335.)

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

This is an action brought by the plaintiff to recover damages against the proprietor of a stage line for a personal injury alleged to have been received by plaintiff while a passenger on the stage, caused by the negligence of the defendant.

The allegations of negligence are as follows: "That at the stage station known as 'Campbell's,' on said road, the defendant took with said stagecoach an extra horse, not necessary or used to draw said stagecoach, and carelessly and negligently tied the said extra horse beside one of the horses used in drawing said stagecoach, to lead said extra horse to another stage station on said road; that in ascending Arrow Creek Hill, and at a dangerous portion of said hill, the horses drawing said stagecoach became frightened, by reason of defendant's negligence and carelessness in so tying said extra horse beside one of said horses in said team, and said team started to run away and became unmanageable." Plaintiff then alleges, in substance, that he was in fear of his life, and jumped from the stage; that the injury complained of was the result of the jumping; and that he only did what a reasonable man would have done under the circumstances.

To this complaint the defendant filed an answer denying all its allegations, and alleging "that, if any horse was so taken by any employe of the defendant, it was so taken without defendant's knowledge and against defendant's instructions, and was not so taken in the course of the regular employment of the said employe." To this answer a replication was filed denying the new matter.

Upon the issues thus formed the case was tried with a jury. Plaintiff introduced certain evidence and rested. Defendant moved for a nonsuit, which was overruled. His counsel then announced, "We are willing to rest the case upon the evidence," whereupon the court instructed the jury, which returned a verdict for plaintiff. A motion for a new trial was made and overruled, and judgment entered on the verdict. From the order overruling the motion for a new trial, this appeal is prosecuted.

We do not mean to be understood as holding that the allegations of negligence found in this complaint are sufficient. The case was tried upon the theory that the negligence alleged was the manner of taking along the extra horse. No question has

been raised as to the sufficiency of these allegations, and we have therefore not considered that question.

1. By the former decisions in this court, under a complaint based upon facts similar to those involved in this case, the burden was upon plaintiff to prove actionable negligence on the part of the defendant, and want of contributory negligence on the part of plaintiff. (*Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21; *Wall* v. *Helena Street Ry. Co.,* 12 Mont. 44, 29 Pac. 721; *Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Prosser* v. *Montana Central Ry. Co.,* 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814; *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852.)

The nature and character of proof necessary in this case is governed by the same rule as is applied to actions of negligence generally—that negligence existed, and that the injury complained of was the direct and proximate result of such negligence.

No question of the application of the doctrine of *res ipsa loquitur* arising in the case, and the rule as to the burden of proof being plain, much of the argument and briefs of counsel in the case become unimportant.

Under the pleadings in the case, defendant could only urge the following defenses: (1) That there was no actionable negligence; (2) that there was no injury to plaintiff, or that the injury alleged was not the direct and proximate result of the negligence complained of, and (3) that the plaintiff was guilty of such contributory negligence as to prevent recovery. Under the first defense, defendant might have insisted that the taking along of the extra horse in the manner alleged was not the cause of the runaway of the stage team as alleged, but that it occurred from other causes, such as unavoidable accident beyond the power of defendant to control. In short, he might have insisted upon anything which tended to show the absence of actionable negligence. Under the second defense he might have relied upon anything which tended to disclose that there was no injury, or, if any was disclosed, anything which tended to show that

such injury was not the direct and proximate result of the negligence alleged. Under the third defense he might have relied upon any act of the plaintiff which tended to show the contributory negligence mentioned in the pleadings.

2.   As another defense, defendant relied upon the proposition that the negligent acts charged, if they had any existence, were the acts of his employes performed without his knowledge, against his instructions, and not in the course of the regular employment of such employes. There was no evidence given on the trial in any manner relating to this alleged defense, and the court charged the jury as follows: "The principal is held liable for the negligence and other malfeasance or malfeasances and omissions of his agent or servant in the course of his employment, although the principal did not authorize or justify, or, indeed, know of, such misconduct, or even if he forbade the acts constituting the negligence. Therefore, in this case, if you believe that the driver, Murphy, tied the extra horse beside one of the horses used in drawing the said stagecoach, and that that act was negligence, as defined by the court in these instructions, then you must find for the plaintiff, notwithstanding the fact that there is no proof whether the defendant authorized the act on the part of his servant Murphy." By this charge the jury were told that the acts of defendant's servants complained of as constituting negligence were within the scope of the employment. Nothing in the language used, however, in any manner indicates that the court had in mind the question of the liability of the defendant as a carrier of passengers for hire in case the acts of negligence complained of were beyond the scope of the employment.

This was an action by a passenger against a carrier for hire to recover for a personal injury caused by the alleged negligence of the carrier's servants in the course of carriage. The general rule of law is well settled that the master is not responsible for injuries to a third person caused by the negligence or tort of the servant unless such acts are within the scope of the servant's employment. Counsel for appellant has supported

this rule by the citation of abundant authority, but in none of the cases cited by him did the relation of carrier and passenger exist, and therefore the question above suggested was not adverted to, discussed or decided in any of such cases.

Does this rule apply in actions like the one under consideration? This question has not been heretofore considered by this court. In our investigation we were not materially aided by counsel, as this precise question was not raised, argued, or even adverted to, in the briefs filed or arguments made on the hearing. After an examination of the existing authorities, we have concluded that this rule has no application where such third persons are under contract relations—express or implied—with the master, when by such relation a duty devolves upon the master to exercise the highest degree of care for their protection and safety, or where a statute imposes certain duties for their protection.

Our statute charges upon the carrier of passengers for hire certain duties, among which are the following (Section 2790, Civil Code): "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." This statute is merely decalratory of the common law as it has existed for many years. A contract of carriage is, in effect, that the carrier, in consideration of the payment of the rate demanded, will use all possible care and diligence in delivering the passenger safely and promptly at the place of destination. The utmost care is contracted for, and, while the carrier is not an insurer of the safety of the passenger, he does guaranty that the passenger shall receive the utmost care, and any failure to provide the same is a breach of his statutory duty, and of the duty imposed by the contract of carriage, and negligence, for which he is liable.

From the nature of the business, the actual transportation of passengers is usually intrusted to servants. These servants, therefore, must be charged with the exercise of the same care toward the passenger as is charged upon the master under the

statutes and the contract of carriage; and it necessarily follows that any negligence or wrong committed to the passenger by the servant is a violation of such statute and contract, and if injury results therefrom the master is liable. The carrier is bound to do certain acts, and cannot excuse himself from liability upon the ground that he has committed their performance to others. The proper doing of the acts by another, appointed by him alone, is just as obligatory and binding upon him as though he undertook to perform them himself. He is bound to discharge his statutory and contractual obligation to the letter, and, if he commits the performance of these obligations to another, he does so at his own peril. There is no way in which he can shirk or evade their performance. If the servant in such cases does what the master could not do without violating the duties resting upon him, then the master must be held responsible for the acts of the servant, no matter how wrongful, willful or even malicious they may be. Therefore, whenever the misconduct of the servant causes a breach of the obligation or the violation of the duty of the master, the master is liable for such acts, if injury follow. (Wood on Master and Servant, Sec. 321; *Dillingham v. Russell,* 73 Tex. 47, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; *Weed* v. *Panama R. R. Co.,* 17 N. Y. 362, 72 Am. Dec. 474; *Stewart* v. *Brooklyn, etc. R. R. Co.,* 90 N. Y. 588, 43 Am. Rep. 185; *Milwaukee & Miss. R. R. Co.* v. *Finney,* 10 Wis. 388.)

This principle is further illustrated and emphasized by cases where the servant of a carrier commits a willful assault upon a passenger. If such act is a violation of the contract of carriage, *a fortiori* mere negligence on the part of the servant is such a violation. Yet the rule is well established that such an act is a violation of the contract of carriage, and renders the carrier liable. The courts will not allow the carrier to shield himself behind the objection that such act was beyond the scope of the servant's employment.

One of the leading cases upon this proposition is that of *Goddard* v. *Grand Trunk Ry.,* 57 Me. 202, 2 Am. Rep. 39;

where the plaintiff, a passenger on the railroad of defendant, was insulted and assaulted by the brakeman on the train. The defendants contended that they were not liable because the brakeman's assault upon the plaintiff was willful and malicious, and was not directly or impliedly authorized by them. Judge Walton says: "The fallacy of this argument, when applied to the common carrier of passengers, consists in not discriminating between the obligation which he is under to his passenger, and the duty which he owes a stranger. It may be true that, if the carrier's servant willfully and maliciously assaults a stranger, the master will not be liable; but the law is otherwise when he assaults one of his master's passengers. The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully, and, if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. The law seems to be now well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger, but he is bound to use all such reasonable precautions as human judgment and foresight are capable of to make his passenger's journey safe and comfortable. He must not only protect his passenger against the violence and insults of strangers and co-passengers, but *a fortiori* against the violence and insults of his own servants. If this duty to the passenger is not performed, if this protection is not furnished, but, on the contrary, the passenger is assaulted and insulted through the negligence or the willful misconduct of the carrier's servant, the carrier is necessarily responsible. * * * The grounds of the carrier's liability may be briefly stated thus: The law requires the common carrier of passengers to exercise the highest degree of care that human judgment and foresight are capable of to make his passenger's journey safe. Whoever engages in the business impliedly promises that his passenger shall have this degree of care. In other words, the carrier is conclusively presumed to have promised to do what, under the

circumstances, the law requires him to do. We say 'conclusively presumed,' for the law will not allow the carrier, by notice or special contract even, to deprive his passenger of this degree of care. If the passenger does not have such care, but, on the contrary, is unlawfully assaulted and insulted by one of the very persons to whom his conveyance is intrusted, the carrier's implied promise is broken, and his legal duty is left unperformed, and he is necessarily responsible to the passenger for the damages he thereby sustains."

Another leading case upon this question is that of *Craker* v. *Chicago & N. W. Ry. Co.,* 36 Wis. 657, 17 Am. Rep. 504. In this case the conductor of a railroad train kissed a female passenger against her will, for which action the passenger brought action for assault. The railroad company undertook to defend on the ground that the action of the conductor was beyond the scope of his employment, but the company was held liable for damages. Chief Justice Ryan uses the following language in discussing the case: "But we need not pursue the subject. For, however that may be in general, there can be no doubt of it in those employments in which the agent performs a duty of the principal to third persons, as between such third persons and the principal. Because the principal is responsible for the duty, and if he delegate it to an agent, and the agent fail to perform it, it is immaterial whether the failure be accidental or willful, in the negligence or in the malice of the agent; the contract of the principal is equally broken in the negligent disregard or in the malicious violation of the duty of the agent. It would be cheap and superficial morality to allow one owing a duty to another to commit the performance of his duty to a third, without responsibility for the malicious conduct of the substitute in performance of the duty. If one owe bread to another, and appoint an agent to furnish it, and the agent, of malice, furnish a stone instead, the principal is responsible for the stone and its consequences. In such cases malice is negligence. Courts are generally inclining to this view; and this court long since affirmed it."

In the late case of *Birmingham Ry. etc. Co.* v. *Baird,* 130 Ala. 334, 30 South. 456, 89 Am. St. Rep. 43, 54 L. R. A. 752, which was an action for a willful assault upon a passenger by the agents of the carrier, Chief Justice McClellan uses the following language: "There appears to be some divergence of opinion as to a common carrier's liability for an assault, and the like, committed by its agent upon a passenger when the agent is acting beyond the scope of his employment, in the usual acceptation of that phrase. Of course, the law is well settled that for torts committed by such agents or employes upon persons who are not passengers the employer is not liable, unless the act was, in a sense, in the line of duty imposed by the employment, as where a conductor of a train, being under duty to the railway company, and having authority to eject persons not entitled to carriage, commits, out of his own malice and personal ill will toward such a person, an unnecessary assault upon him in ejecting him from the train, the wrongful act, though against the express rules and regulations of the carrier, is yet within the scope of the conductor's employment, and the company would be liable in damages for it; but the reverse would be true—the company would not be liable—if such conductor should assault a person standing by the side of the train, for instance, and having no relations with the carrier, nor in any way encroaching upon the rights of the carrier, for in this latter case the wrongful act of the conductor would have no connection with his duties to the company, and would be entirely beyond the scope of his employment. Such is the law as between trespassers and strangers generally, on the one hand, and the carrier, on the other. But as between the carrier and its passengers an entirely different rule prevails. As to them the contract of carriage imposes upon the carrier the duty not only to carry safely and expeditiously between the termini of the route embraced in the contract, but also the duty to conserve by every reasonable means their convenience, comfort and peace throughout the journey. And this same duty is, of course, upon the carrier's agents: They are under the duty of protecting each passenger from

avoidable discomfort and from insult, from indignities, and from personal violence. And it is not material whence the disturbance of the passenger's peace and comfort and personal security or safety comes or is threatened. * * * It is wholly inapt and erroneous to apply the doctrine of scope of employment, as ordinarily understood, to such an act. Its only relation to the scope of the servant's employment rests upon the disregard and violation of a duty imposed by the employment. This is, beyond question, we think, the true doctrine, on principle; and while, as indicated above, there are adjudications against it, the great weight of authority supports it."

In addition to the above cited authorities, further reference is hereby made to 4 Elliott on Railroads, Sec. 1638; 3 Thompson on Negligence; *Richmond, etc. R. R. Co. v. Jefferson,* 89 Ga. 554, 32 Am. St. Rep. 87, and note, 90 to 100; *Stranahan Co. v. Coit,* 55 Ohio St. 398, 45 N. E. 634; *Stokes v. Saltonstall,* 13 Pet. 181, 10 L. Ed. 115; *New Jersey Steamboat Co. v. Brockett,* 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049; *Kellow v. Central Iowa Ry. Co.* 68 Iowa, 470, 23 N. W. 740, 27 N. W. 466, 56 Am. Rep. 858; *Thompson v. Yazoo, etc. R. R. Co.,* 47 La. Ann. 1107, 17 South. 503; *Perez v. New Orleans, etc. R. R. Co.,* 47 La. Ann. 1391, 17 South. 869; *Gallagher v. Bowie,* 66 Texas, 265, 17 S. W. 407; *Anderson v. Scholey,* 114 Ind. 553, 17 N. E. 125; *Farish & Co. v. Reigle,* 11 Grat. 697, 62 Am. Dec. 666; *Stockton v. Frey,* 4 Gill, 406, 45 Am. Dec. 138; *Sherley v. Billings,* 8 Bush. 147, 8 Am. Rep. 451; *Bayley v. Manchester, etc. Ry. Co.,* L. R. 7 C. P. 415; *Tuller v. Talbot,* 23 Ill. 357, 76 Am. Dec. 695; *Derwort v. Loomer,* 21 Conn. 245; *Roberts v. Johnson,* 58 N. Y. 613; *Frink & Co. v. Coe,* 4 G. Greene, 555, 61 Am. Dec. 141; *Gillingham v. Ohio Riv. R. R. Co.,* 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827; *Chicago & Eastern R. R. Co. v. Flexman,* 103 Ill. 546, 42 Am. Rep. 33; *Lakin v. Oregon Pac. R. R. Co.,* 15 Or. 220, 15 Pac. 641; *Pennsylvania R. R. Co. v. Vandiver,* 42 Pa. St. 365, 82 Am. Dec. 520; *Dwinelle v. New York Central, etc. R. R. Co.,* 120 N. Y. 117, 24 N. E.

319, 8 L. R. A. 224, 17 Am. St. Rep. 611; *White* v. *Norfolk, etc. R. R. Co.,* 115 N. C. 631, 20 S. E. 191, 44 Am. St. Rep. 489; *Houston & Texas Cent. R. R. Co.* v. *Washington* (Tex. Civ. App.), 30 S. W. 719; *Haver* v. *Central R. R. Co.,* 62 N. J. Law, 282, 41 Atl. 916, 43 L. R. A. 84, 72 Am. St. Rep. 647.

3. The court charged the jury as follows: "The proprietor of a stagecoach covenants that he will insure the safe carriage of passengers by the exercise of extraordnary diligence and care, and is responsible for any neglect." The defendant requested the court to charge the jury as follows: "While the defendant, as a common carrier of passengers, is charged with the highest degree of care in the operation of his line to insure the safe transportation and delivery of his passengers, he is not an insurer of their personal safety; and, if in this instance the runaway was due to unavoidable accident, your verdict should be for the defendant." The court refused to give this requested instruction, which we think should have been given, as a correct statement of the law.

The language used by the court may have induced the jury to believe that the defendant was an insurer of the safety of plaintiff. The law is well settled that a carrier is not an insurer of the safety of the passenger, but he is charged with the utmost care and skill which a very prudent and skillful man would use under similar circumstances for his own protection. (Shearman & Redfield on Negligence, Secs. 494, 495; 3 Thompson on Negligence, Sec. 2721; Story on Bailments, Sec. 601.) Again, this charge excluded from their consideration the inquiry whether or not the runaway complained of was purely accidental, and beyond the power of the defendant or his agents to avoid by the exercise of the utmost care. We think the court erred in this regard.

4. The defendant also requested the court to instruct the jury as follows: "It is further incumbent upon the plaintiff to show that the taking of this horse along was the direct, proximate cause of the runaway; and, if the plaintiff has failed to show by a preponderance of the evidence that this was the cause,

he cannot recover in this action." This request was also re-
fused, and we do not find in the charge to the jury any state-
ment that the plaintiff must prove that the injury complained
of was the direct and proximate result of the negligence alleged.
Recovery can only be had where the injury is the proximate
result of the negligence alleged and proven. (1 Shearman &
Redfield on Negligence (5th Ed.), Sec. 26.)

We therefore advise that the order overruling defendant's
motion for a new trial be reversed, and the court below be di-
rected to grant a new trial.

PER CURIAM.—For the reason stated in the foregoing opin-
ion, the order appealed from is reversed, and the cause remanded
for a new trial.