No. 4052

First Circuit Appeal

STELLA MALLET TIMBERLAKE v. E. R. CASSIDY

(February 18, 1925, Opinion and Decree)
(May 5, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Marriage—Par. 277.**

In view of Articles 2402 and 121 of the Civil Code, Article 106 of the Code of Practice and Section 3990 of the Revised Statutes, the husband's joinder to assist his wife in a suit for personal injuries to his wife is not necessary, but it does no harm where the prayer is for judgment in favor of wife only.

2. **Louisiana Digest—Pleading—Par. 62.**

Where an exception of no cause of action is based on an assumption of fact and a conclusion of law, in the petition, if the petition otherwise states a cause of action, the exception will be overruled.

ON THE MERITS

3. **Louisiana Digest—Automobiles—Par. 4.**

It is the duty of an automobile owner and driver who invites others into his car to exercise reasonable care and precautions for the safety of his guests, without requests from them to that effect.

4. **Louisiana Digest—Automobiles—Par. 4.**

One who invites others to ride in his automobile does not necessarily have to be guilty of gross negligence and willful recklessness in order to be held responsible for the damage caused by the accident. If he was not reasonably careful and prudent he is responsible where his negligence caused the accident.

5. **Louisiana Digest—Automobiles—Par. 4b, 4d; Municipalities—Par. 225.**

Where in an automobile collision, the cause of which was the recklessly fast driving, greatly exceeding the speed limit, of an automobile owner at a blind street intersection, the owner driver

is responsible for the damages resulting.

(Civil Code, Art. 2315. Editor's note.)

Appeal ·from ·the Twenty-sixth Judicial District, Parish of Washington. Hon. Prentiss B. Carter, Judge.

This is a suit for personal injuries caused by an automobile collision.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

(First Circuit Appeal No. 4094, G. C. Timberlake vs. Ed. R. Cassidy, is the same. Editor's note.)

Baskom D. Talley, of Bogalusa, attorney for plaintiff, appellee.

Miller & Miller, of Covington, attorney for defendant, appellant.

ELLIOTT, J. Mrs. Stella Mallet Timberlake, wife of Garnet C. Timberlake, and G. C. Timberlake to authorize and assist his wife, brought suit against E. R. Cassidy for ·damages on account of personal injuries received by· her in an automobile collision. She was riding at the time in an automobile belonging to and driven by said Cassidy. It was overturned in the collision and Mrs. Timberlake and her daughter, Lois Timberlake, were both badly injured. Garnet C. Timberlake, father and as such the legal administrator of ·the estate of Lois Timberlake, also brought suit against E. R. Cassidy for damages in behalf of his· daughter on account of her injuries received when the automobile overturned.

The petitions in each of the cases are alike, save as to the plaintiff, the cause of action and the defenses the same. The two suits were consolidated and tried together in the lower court. To save writing two opinions, which would be but repetition, we will state both cases together, our opinion to apply to each case.

The plaintiffs substantially allege that the defendant, E. R. Cassidy, invited Mrs. Timberlake and her daughter, Lois, about 7½ years of age, to go riding with him and his family in his automobile. She accepted the invitation for herself and daughter and went riding in his automobile with him and his family, his wife and· their son, about 4 years of age.

They allege that Mr. Cassidy drove his car fast and recklessly throughout the trip, disregarding requests not to drive so fast.

That on his return from the country he continued to drive ·recklessly and dangerously fast through the city of Bogalusa, greatly in excess of the speed laws of the city, taking no precautions, refusing to heed cautions and requests not to drive so fast, until he collided with another automobile. That his automobile was thereby overturned and Mrs. Timberlake and her· daughter badly injured by the overturning of his car.

Lois Timberlake's right leg was broken quarterly above the knee and she en-· dured on said account great pain and suffering for more than a month. Four thousand and five hundred dollars are claimed on account of her injuries and suffering.

Mrs. Timberlake sustained injuries which were· likely greater than those of her daughter, more enduring. She received a greater shock and her sufferings were equally severe. Five thousand dollars are claimed in her petition on account of her injuries, sufferings and expenses at the hospital. Plaintiffs allege that the collision and their injuries and· sufferings are due to defendant's recklessly fast and dangerous driving.

That Avenue F at the intersection of Fourth street, where the collision occurred, was a dangerous place and defendant was familiar with the place and the danger. That it was defendant's duty in driving to use reasonable care for their safety as his guests; that the collision and their injuries and sufferings were entirely due to his fault and want of care for their safety. Mr. Timberlake in his petition appears in several capacities. Defendant called on him to elect, which he did, and elected to proceed as father and legal administrator of his daughter's estate.

To the suit of Mrs. Timberlake defendant filed an exception of misjoinder of parties plaintiff, which was overruled. He then filed in each case an exception of no cause or right of action, which was overruled.

He then answered in each case and plaintiff's allegations of fast, reckless, dangerous driving, that he was warned and cautioned not to drive so fast; negligence and violation of the speed ordinances of the city of Bogalusa; and all their other allegations to the effect that he was responsible for the collision and at fault in the matter are denied, etc.

The cases were tried before the judge, who rendered judgment in the suit of Mrs. Timberlake for $4000.00 in her favor with interest and cost. In her case we do not find an assignment of reasons for judgment.

In the suit of Mr. Timberlake for his daughter, Lois Timberlake, judgment was rendered in his favor for $3000.00 with interest and cost. In this case written reasons for judgment were given and are equally applicable to the suit of Mrs. Timberlake.

Defendant appealed both cases to this court.

We will consider both cases together. The motion requiring Mr. Timberlake to elect was complied with; no further objection appearing on that account. The exception in the suit of Mrs. Timberlake that her husband's joinder as a plaintiff to authorize and assist her is improper is not well founded. The prayer of the petition is for judgment in her favor only. The husband's joinder to authorize and assist his wife may not be necessary in a suit of this kind now, C. C. Art. 2402 (and 1912 No. 70), but see other provisions of the law, C. C. Art. 121, C. P. Art. 106, R. S. Sec. 3990; also Lewis vs. Holmes, 109 La. 1030, 34 South. 66; St. Geme vs. Boimare, 117 La. 233, 41 South. 557. We hold that the joinder, even if not necessary, did no harm. The exception was properly overruled.

The exceptions of no right or cause of action in the two cases are based on an assumption of fact and conclusion of law, found here and there in the petitions. These assumptions and conclusions left out of view, enough and sufficient allegations of fact remain in each petition to support the cause of action.

The exceptions were properly overruled.

E. R. Cassidy, the defendant, testifies that he was running at the time of the collision thirty or thirty-five miles an hour.

His testimony on the subject of his speed at the time is in part as follows:

"Q. How fast were you going when you struck the Ford car?

"A. As soon as my wife called my attention to the fact that was a dangerous corner I put on the brakes; just at that time I saw the Ford car coming; then I got out to the intersection of the streets; it looked as though we would meet in the middle of the street; I swerved to the right and put on the gas and thought I would pass before he got there.

"Q. You maintained your speed until she called your attention about the dangerous corner; then you slackened your speed, then again, in order to avoid the accident you put the speed on again?

"A. That's correct."

Mrs. Cassidy occupied the back seat in the automobile with Mrs. Timberlake and her daughter, and as Mr. Cassidy approached this corner she felt uneasy and asked him to be cautious. Mrs. Timberlake, speaking of that matter, says:

"* * * and just before we got there, she asked him to be cautious, that there was a high hedge there and it would be impossible to see a car until we were right on it. We were still driving fast and this Ford car was coming down Fourth street and we were right together before we knew it. It was done so quickly; we run against the Ford on the side next to us somewhere near the front."

Further, says:

"Q. How far was the Buick car from the intersection of Fourth street when Mrs. Cassidy spoke to Mr. Cassidy the last time?

"A. No so far; not quite a half block. We were almost to the corner.

"Q. She cautioned him not to drive so fast at the corner? ·

"A. Yes, sir; and she was partially standing in the car trying to see around the corner over this high hedge; she was trying to see if there was a car approaching." Note Testy., p. 2.

Mrs. Timberlake says several times in her testimony that Mrs. Cassidy cautioned Mr. Cassidy to slow up as he reached this corner. Note testimony, pp. 6 and 7.

Her testimony in this regard is admitted by both Mr. and Mrs. Cassidy.

Mrs. Cassidy, speaking of the matter, says:

"I remember one time just before the accident, on approaching the corner; I had driven there myself and I remembered how difficult it is to see around the cor-

ner on account of a high hedge, and that came to my mind; in fact, the hedge was so high you couldn't see the top of a car there, and I remember speaking to Mr. Cassidy to please slow up, and I remember distinctly his putting on his brakes. I heard the brakes squeak when he put them on." Note testimony, p. 22.

"I must say that I was alarmed as we approached the corner and I spoke to him and he put the brakes on immediately.

"I remember seeing the Ford coming toward us and Mr. Cassidy turned out; then there was a loud noise and that's all I remember until I was picked up." Note testimony, p. 23.

Mr. and Mrs. Cassidy gave their testimony and answers in a straightforward manner. Mr. Cassidy admitted in his testimony that the ordinances of the town limited the speed of cars to fifteen miles an hour. Note testimony, p. 37.

He was a member of the city council, assisted in passing them, and knew all about them. He admitted that his wife coutioned him as he approached this corner; says, however, that it was not unusual for her to request him to drive slow, that she is nervous in a car. Note testimony, p. 28. Note testimony, pp. 33 and 34.

He says in another place:

"Q. You say your wife asked you to slow down and you did?

"A. Yes, sir.

"Q. State what occurred after that.

"A. As I stated, I slackened the speed of the car considerably. I saw this man coming down the hill; at the rate I was going I saw that if we both continued we would collide right at the intersection. I slid out to the right as far as I could and picked up speed in order to get by.

"Q. Did you have time to put on your brakes?

"A. The brakes had been put on before. I then applied the gas in an effort to get out of the way.

"Q. What happened then?

"A. I thought I was by; he struck my car at the back end and turned us over." Note Testy., pp. 33 and 34.

The evidence shows that both cars were overturned; that of Mr. Jones, a Ford, was lying in the middle of the road; that of the defendant, a Buick, after rolling over three times, rested on the side of the road.

The evidence shows that Avenue F, at the intersection of Fourth street, is within the incorporated limits of the city of Bogalusa and a dangerous place. The danger could be sen by and was made known to Mr. Cassidy; therefore, on coming near, he should have brought his car under control. He attempted to pass it without having his car under control and at a speed which, according to this testimony, was twice, but according to others about three times as fast as the city ordinance permitted, and the result was the collision, overturning, injuries to and suffering of the petitioners. It was imprudent in the extreme to do as he did.

The evidence shows that Mr. Jones came into Avenue F from Fourth street very slow with his car under control. The distance per hour Mr. Jones was driving is not definitely stated in the evidence, but it justifies us in holding that in the matter of speed and caution he proceeded the adverse of that of Mr. Cassidy. That Mr. Cassidy darted up on him as he entered Avenue F at a speed beyond proper control seeing him hardly more than an instant before he reached him, he could not stop or give him roadway, he could only swerve his car to the right as he rushed forward in an effort to pass around ahead of and get by him, but it could not be done, because of his reckless speed.

It does not appear from the evidence whether Mr. Jones saw or could have seen Mr. Cassidy before Mr. Cassidy arrived at the intersection.

Mrs. Timberlake and a number of witnesses claim that Mr. Cassidy struck Mr. Jones as he passed him; while Mr. and Mrs. Cassidy and others claim that Mr. Jones struck Mr. Cassidy as Mr. Cassidy passed him, causing the oevrturning. The evidence shows that the primary cause of the collision, consequent overturning, injuries and suffering of the petitioners was Mr. Cassidy's want of care and failure, in duty to himself and family and to Mrs. Timberlake and her daughter, his guests, riding in his car on his invitation, manifested by his heedless and recklessly fast driving at the intersection in question.

The petitioner's right of action against Mr. Cassidy and right to hold him responsible for their injuries and suffering is therefore not dependent on whether or not Mr. Jones struck Mr. Cassidy's wheel as Mr. Cassidy ran by him, consequently that matter is not important in this case and will not receive further consideration.

We have noticed defendant's contention in his brief that Mrs. Timberlake was guilty of contributory fault because she did not protest his speed.

This defense is not pleaded in the answers.

It is a confession of fault on the part of defendant in the matter urged, and the evidence does not show that Mrs. Timberlake contributed thereto. It does not appear from the evidence that Mrs. Timberlake said anything on the subject of speed and the danger thereof; but Mr. Cassidy was asked on the trial:

"Q. Did Mrs. Timberlake or Lois at any time during the trip hinder you in any way in the operation of the car?
"A. They did not.
"Q. Did they in any way contribute to this accident?
"A. They did not." Note testimony, p. 31.

The burden of proof was on the defendant. The contributing fault is not established by the evidence.

Defendant contends in his written argument, citing authorities from other states, that as Mrs. Timberlake and her daughter were his guests, riding in his car gratuitously and for pleasure by his invitation, it was her duty to protest his speed if excessive, and then, if not reduced to safety, to demand that he stop and permit her and her daughter to leave it, and that not having done so she cannot recover.

We agree with the plaintiffs that such a contention is not in harmony with the Civil Code of Louisiana, according to which "an obligation is * * * synonymous with duty" and "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it" and "every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence or want of skill."

Therefore it was not incumbent on Mrs. Timberlake as defendant approached the intersection in question to see that he brought his car under proper control, and if he did not to demand that he stop and permit her and her daughter to leave it. Such an exaction applied to her in this case would be unreasonable. She did not know that the place was dangerous until she heard Mrs. Cassidy informing him of it. He was driving and occupying the front seat and could see ahead and the precaution which the place required to be safe better than plaintiff could. It is inferable from the evidence that the intersection was reached, danger seen and automobiles overturned almost simultaneously, that is, so quick that nothing she could have said or done could have averted the collision. It was the duty of defendant to exercise reasonable care and precaution for the safety of his guests, without requests from them to that effect, and reasonable care required him not to run by such a place at a speed which forced on them the involuntary jeopardy of a chance escape. Gross negligence and willful recklessness is not necessary under the law to his responsibility; neither must that active care appear which the law requires when passengers are carried for hire; but he was under the obligation and duty to his guests to exercise reasonable care and prudence for their safety and to drive accordingly.

Thompson vs. R. R., 47 La. Ann. 1107, 1108, 17 South. 503.

Jacobs vs. Jacobs, 141 La. 272, 273, 74 South. 992.

R. R. Co. vs. Derby, 14 H. 467, 484.

Steamboat New World vs. King, 16 H. 469, 474.

Thompson on Negligence, Vol. III, Secs. 2617, 2646, 3328.

And the facts developed in this case warrant us in finding that defendant did not perform his duty to his guests on the occasion in question and he is therefore responsible to them in damages for their injuries and suffering. Mrs. Timberlake was in the hospital at Bogalusa for a month. She received her injuries about a year previous to the trial and at the time of the trial she testified that she had never ceased to suffer. She further says in her testimony: "I can't get about my duties nothing to compare with what I did before I was hurt; in fact, I am not a normal woman and don't expect to be any more." Note testimony, p. 4, and the evidence shows considerable expense at the hospital on account of herself and daughter.

The evidence shows that Lois Timberlake was confined in the hospital about a month. About a year had passed at the time of the trial since she received her injuries, and the testimony was in effect that she had not fully recovered. Mrs. Timberlake and her daughter both endured severe and prolonged pain and suffering.

The amount of damages allowed in the lower court does not appear to be con-

tested in this court. The sums allowed in the lower court are intended to cover all expenses as well as compensation for the injuries received and suffering endured.

The judgment appealed from is correct and must be affirmed.

It is therefore ordered, adjudged and decreed that the judgment appealed from in favor of Mrs. Stella Mallet Timberlake and against E. R. Cassidy herein be and the same is hereby affirmed, the defendant and appellant to pay the cost of both courts.