PHILLIPS, RESPONDENT, *v.* BUTTE JOCKEY CLUB & FAIR ASSN., APPELLANT.

(No. 3,176.)

(Submitted October 29, 1912.   Decided November 14, 1912.)

[127 Pac. 1011.]

*Personal Injuries—Places of Amusement—Racecourses—Safety of Patrons—Measure of Duty of Owner—Complaint—Insufficiency.*

1.   The measure of duty which the owner of a place of amusement, such as a racecourse, owes to his patron who pays for the privilege of witnessing races, as regards the latter's safety from injury, is that of ordinary care; therefore, a complaint which did not allege facts showing that defendant association had notice—either actual or im-

plied—of defects in a stairway leading to its grand stand (a nail pro-
truding about an inch from a step and a broken board in the floor of
a landing), which were alleged to have caused plaintiff's fall and at-
tendant injury, failed to state facts sufficient to constitute a cause of
action.

*Appeal from District Court, Silver Bow County; John B.
McClernan, Judge.*

ACTION by Mrs. G. Phillips against the Butte Jockey Club and
Fair Association to recover damages for personal injuries. From
a judgment for plaintiff and an order denying it a new trial,
defendant appeals. Reversed and remanded.

*Mr. Frank C. Walker,* and *Messrs. Lamb & Walker,* submitted
a brief in behalf of Appellant; oral argument by *Mr. Frank C.
Walker,* and *Mr. Lamb.*

It is the duty of the owner of a racetrack or fair grounds to
exercise reasonable or ordinary care to the end of keeping said
premises safe for the benefit of those who come upon them by
his invitation, and if any injury is occasioned by the unsafe
condition of the premises which is known to him and not to
them, and which he negligently suffered to exist, and has given
them no notice of, he is liable for any damages sustained.
(Thompson on Negligence, 985; *Bennett* v. *Louisville N. R. R.
Co.,* 102 U. S. 577, 26 L. Ed. 235; *Lunt* v. *P. & P. Co.,* 48 Colo.
316, 21 Ann. Cas. 492, 110 Pac. 203.)   Plaintiff's complaint is
vitally defective in that it fails to allege any fact or facts from
which it could be deduced that defendant failed to exercise
reasonable or ordinary care to the end of keeping its premises
safe for the benefit of those who came upon them by its invita-
tion.   The mere fact that a nail or spike was permitted to be
and protrude out of and above a board upon defendant's stairs
does not lead us, by any method of reasoning, to the conclusion
that the defendant did not exercise reasonable or ordinary care
in keeping its premises safe.   (See *Jennings* v. *Tompkins,* 180
Mass. 302, 62 N. E. 265; *Nephler* v. *Woodward,* 200 Mo. 179, 98
S. W. 488.)   Negligence of the person conducting a public ex-
hibition of horseracing cannot be presumed from the mere fact

that a spectator was injured by a runaway horse while in the place reserved for spectators. (*Hart* v. *Washington Park Club,* 157 Ill. 9, 48 Am. St. Rep. 298, 29 L. R. A. 492, 41 N. E. 620.)

Further, the complaint is defective in that it does not allege that the defendant knew of the existence of the defect, if any defect existed. (*Cousineau* v. *Muskegon Traction & Light Co.,* 145 Mich. 314, 108 N. W. 720; *Selinas* v. *Agricultural Society,* 60 Vt. 249, 6 Am. St. Rep. 114, 15 Atl. 117; *Kelly* v. *New York & S. P. R. Co.,* 11 Cent. Rep. 874, 109 N. Y. 44, 15 N. E. 879.)

The defendant owed to the plaintiff the same duty to maintain its premises in a reasonably safe condition that is imposed upon a municipality with reference to public streets. A correct and complete statement of the law in such cases is found in Thompson on Negligence, section 5966. (28 Cyc. 1362; Dillon on Municipal Corporations, 5th ed., sec. 1718; *Leonard* v. *City of Butte,* 25 Mont. 410, 65 Pac. 425.)

The defendant is not liable for the unsafe condition of those parts of the premises not intended for visitors, and unless it is alleged that plaintiff was in that portion of the premises set out for spectators, no liability exists for injuries sustained. (See Thompson on Negligence, secs. 988, 989; *Murray* v. *McLean,* 57 Ill. 378; *Zoebisch* v. *Tarbell,* 10 Allen (Mass.), 385, 87 Am. Dec. 660.)

For Respondent, there was a brief by *Messrs. McCaffery & Tyler,* and oral argument by *Mr. McCaffery.*

As the owner of a place of amusement to which the public are invited, upon the payment to it of an admission fee, the appellant was charged with the positive affirmative duty to know that the premises were safe for the use of the public, and it will not be exonerated because it had no precise knowledge of the defective condition of the place to which it invited the public. (See 38 Cyc. 268; 28 Am. & Eng. Ency. of Law, p. 125; *Francies* v. *Cockrell,* L. R. 5 Q. B. 184; *Currier* v. *Boston Music Hall Assn.,* 135 Mass. 414; *Butcher* v. *Hyde,* 10 Misc. Rep. 275, 30 N. Y. Supp. 1073; *Fox* v. *Buffalo Park,* 21 App. Div. 321, 47 N. Y. Supp. 788; *Lush* v. *Peck,* 132 App. Div. 426, 199 N. Y. 546,

16 N. Y. Supp. 1051, affirmed in 93 N. E. 377; *Williams* v. *Mineral City Park Assn.*, 128 Iowa, 32, 111 Am. St. Rep. 184, 5 Ann. Cas. 924, 1 L. R. A., n. s., 427, 102 N. W. 783.)  In the case of one conducting a place of amusement, he is "under a continuing duty of inspection to see that it is reasonably safe for the protection of those whom he invited to come to it."   (1 Thompson on Negligence, sec. 996.)

The business conducted by the appellant is a nuisance, and is permitted by legislative authority for a period of thirty days in counties of the first class.   Appellant was carrying on a place of gambling, and that is *per se* a nuisance.   It was so alleged in the complaint, and no authorization therefor was pleaded by appellant, which is necessary.   (1 Thompson on Negligence, sec. 9.)   While it is not pleaded and therefore is not available as a defense, it may be said the appellant conducted its betting upon horseraces by legislative authority.   But this privilege given to appellant to make money should not be enlarged to an immunity from damages for injuries sustained by one through its carelessness.

"Where the legislature or a municipal council grants rights to individuals to be exercised for their private benefit and profit, though for the accommodation of the public, the principle of the common law attached to the grant the implication that if, in exercising it, although without negligence, they damnify third persons, they must pay damages."   (1 Thompson on Negligence, sec. 9; see, also, *Larson* v. *Ring*, 43 Minn. 88, 44 N. W. 1078; *Baltimore & P. R. Co.* v. *First Baptist Church*, 108 U. S. 317, 27 L. Ed. 739, 2 Sup. Ct. Rep. 719.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action for damages for personal injuries.   The Butte Jockey Club and Fair Association is a private corporation which conducts a place of amusement at Butte, where, during a certain season of each year, horseracing for premiums or purses is carried on, and to which the public generally is invited and an admission fee charged.   Within the inclosure of the race-

course, the association has an amphitheater or grand stand with raised seats for the accommodation of its patrons. In order to reach these seats certain stairways lead from the ground to the grand stand. On August 18, 1910, while the race meeting for that year was being conducted by the association, this plaintiff accepted the invitation extended to the public generally to attend on that day, paid her admission fee, and took a seat in the grand stand. In attempting to leave it, she started to descend the most westerly stairway, when she fell to the first landing and sustained certain injuries of which she complains. She alleges that the cause of her fall was a large nail protruding an inch or more upward through the step of the stairway upon which her clothes caught, and that her injuries resulted from the fall and from alighting upon a broken board in the floor on the first landing. She undertakes to charge negligence on the part of the defendant in permitting the nail to protrude from the step of the stairway and the broken board to remain in the floor of the landing. It is alleged that the defendant negligently permitted these defects to remain ''for a considerable period of time'' before the day of the injury, ''and at the time of said injury, and long prior thereto, defendant knew of the defective condition of the said stairs.'' The defendant challenged the sufficiency of the complaint by demurrer and by an objection to the introduction of any evidence. Its answer is a denial of any negligence on its part. The trial resulted in a verdict and judgment in favor of plaintiff, and, from the judgment and an order denying it a new trial, the defendant has appealed. Only two questions are presented, and only one of these need be determined at this time. It is: Does the complaint state a cause of action? The facts of the case present a question altogether new in this state and one somewhat difficult of solution, since there is a decided conflict in the decisions from other states where similar questions have arisen. In order to determine whether the complaint states a cause of action, it is necessary, first, to determine the principal question, What is the measure of duty which the owner of a place of amusement, such

as a racecourse, owes to his patron who comes thereto at his invitation and who pays for the privilege?

That the owner is not an insurer of the safety of his patrons the authorities are all agreed, but beyond this there is an irreconcilable conflict. Two classes of cases are to be found. In the first are those cases holding that the relationship between the owner of the grand stand and his patron is analogous to that existing between a carrier and passenger for hire, and in the second class are those cases holding that the duty of the owner of the grand stand to his patrons is measured by the standard of ordinary care. If the rule announced by the first class of cases above is to be adopted here, then this complaint is sufficient under all the authorities; if, however, the duty of the grand stand owner is to be measured by the standard of ordinary care, the complaint does not state a cause of action under the former decision of this court and the holding of other courts generally.

The courts which have attempted to draw an analogy between the relationship of the owner of a racecourse and his patron who pays for the privilege of witnessing a race, and that existing between a common carrier and a passenger for hire, have experienced the greatest difficulty in formulating any reason for their position, and apparently equally as great difficulty in stating the rule to which they adhere. A case generally cited by the courts of the first class above as the leading case of that class is *Francies* v. *Cockrell*, L. R. 5 Q. B. 184, involving facts somewhat similar to those before us in the present instance. In the English case the grand stand was erected by an independent contractor, but so negligently built that a part of it fell, resulting in injury to the plaintiff who had paid an admission fee to witness steeple-chase races. It was found that the defendant himself was without fault, and the only question for decision was whether he was to be held for the negligence of the independent contractor. The court of queen's bench held that he was liable. In the course of the opinion it is said: "The nearest analogy to this case seems to be afforded by that of carriers of passengers. The carrier is paid for providing the means

of transporting the passengers from place to place. The defendant received payment for providing the means of supporting the spectator at a particular place. This distinction does not appear to give rise to any difference in principle between the contract to be implied in the one case and the other as to the safety of the means provided for carriage or support." And again: "We have already stated that we consider the same reasoning which is applicable to the case of a carrier of passengers is applicable to the case of a person who, like the plaintiff, provides places for spectators at races or other exhibitions." But a reading of the entire opinion, in the light of the single question before the court for determination, discloses that the English court was speaking of the liability of the grand stand owner for the negligence of an independent contractor when it sought to draw the analogy to the relationship of a carrier to its passenger, and was not considering and did not determine, that the same degree of care is required generally in caring for the safety of the patron as is demanded in favor of the passenger for hire. The rule at common law was the same as that declared by our Codes. Section 5300 reads as follows: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (*Taillon* v. *Mears,* 29 Mont. 161, 1 Ann. Cas. 613, 74 Pac. 421.) That rule was applied in proper cases by the English courts; but in *Francies* v. *Cockrell,* above, the court determined that the duty of the grand stand owner to his patron for hire is to be measured by the standard of ordinary care, instead of the standard of the utmost care, as declared by our statute above and by the rule of the common law.

Referring to the case of *Francies* v. *Cockrell,* Thompson in his work on Negligence, says: "A good expression of the rule of liability, applicable in such cases, is found in an English case to the effect that the proprietor of such a structure is not a warrantor or insurer that it is absolutely safe, but that he impliedly warrants that it is safe for the purpose intended, save only as to those defects which are unseen, unknown and undiscoverable—

not only unknown to himself, but undiscoverable by the exercise of any reasonable skill and diligence, or by any ordinary and reasonable means of inquiry and examination.'' But in the very same paragraph he announces the rule as follows: ''The duty assumed by the owner of places to which the public thus resort in large numbers is manifestly analogous to that which the law imposes upon carriers of passengers. Nevertheless it has been measured by the standard of ordinary care. Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be reasonable care will be a degree of care proportioned to the danger incurred and to the number of persons who will be subjected to that danger.'' (1 Thompson on Negligence, sec. 996.)

*Fox* v. *Buffalo Park,* 21 App. Div. 321, 47 N. Y. Supp. 788, is another case frequently relied upon as sustaining the doctrine for which the respondent in the present case contends. In that case negligence was charged in the original construction of the grand stand, and Green, J., apparently voiced the sentiments of the court in declaring that the fall of the stand was *prima facie* evidence of negligence, but in the next sentence he says: ''The defendant was under obligation to maintain the structure in a reasonably safe condition and fit for the purposes for which it was let so far as the exercise of reasonable care and skill could make it so.''

These confusing, conflicting and contradictory statements fairly illustrate the difficulties confronting the courts and text-writers in attempting to draw an analogy between the duty owed by the grand stand owner to his patrons and that of the common carrier to a passenger for hire. In fact, there is not anything whatever in the situation of the parties to warrant the conclusion that the same measure of duty is demanded. The passenger on board a car of a rapidly moving train entirely under the management and control of the railway officials finds himself utterly helpless. He cannot direct the action of the engineer, conductor, train dispatcher, or other officials operating the train. He cannot with safety leave the train while it is in motion. He has no option except to choose between jumping from the train

while in motion, and thus inviting injury on the one hand, or awaiting the result of impending accident on the other; and it is because of the unequal opportunities of the passenger and the carrier officials, as well as the inherent risk in the business, that the law exacts of the carrier the highest degree of care.   But the position of the passenger does not bear any analogy to that of the racecourse patron ascending or descending the stairway of a grand stand.   The patron's situation is not different from-that of the pedestrian traversing the city sidewalks, or a business man entering a railway depot to obtain information.   Indeed, we think there cannot be a single valid reason suggested for exacting from the grand stand owner any higher degree of care than is demanded from individuals generally in dealing with kindred questions, and this view has the support of the decided weight of authority as well as reason.

A leading case holding to this view and rejecting the theory that there is a close analogy between the relationship of the grand stand owner and his patron, and that existing between the carrier and passenger for hire, is *Williams* v. *Mineral City Park Assn.*, 128 Iowa, 32, 111 Am. St. Rep. 184, 5 Ann. Cas. 924, 1 L. R. A., n. s., 427, 102 N. W. 783, where the cases are reviewed at length.   The conclusion reached is fully sustained by the decided weight of the authorities, and the other cases need not be considered.   The Iowa court said: "As bearing upon the degree of care which the law imposes upon the owners and managers of exhibitions and places of amusement, the decided cases are not numerous, but, so far as the courts have expressed themselves, it appears to be settled that 'reasonable care in such cases is the measure of duty.   We are therefore not prepared to accept counsel's contention, when 'plaintiff placed her person in defendant's hands for a consideration,' it created 'a sort of bailment, just as if she had placed herself in a railroad's hands as passenger.' It would require too much ingenuity to adjust the law of bailments to the implied contract which arises between the proprietor of a place of public amusement and the visitor who attends such place upon the proprietor's invitation; and the undertaking of such a proprietor is not so similar to that of a common carrier

of passengers as to call for an application of the same rule of responsibility."

Our conclusion is that the duty which the defendant owed to plaintiff is to be measured by the standard of ordinary care [38 Cyc. 269]; and, this being so, the complaint fails to state facts [1] sufficient to constitute a cause of action under the decision of this court in *McEnaney* v. *City of Butte,* 43 Mont. 526, 117 Pac. 893. It was necessary to state facts showing that the defendant had notice, actual or implied, of the defects. There is not any claim that the defects mentioned were defects in the original construction of the grand stand. However difficult it may be to draw a distinction between ordinary care and utmost care, or to apply the rule of law in each instance, the court cannot overlook the fact that such distinction is recognized by the law, for the different rules exist by virtue of statute, and the distinction is emphasized by direct reference to their application to the case (1) of a carrier and a gratuitous passenger Rev. Codes, sec. 5299), and (2) of a carrier and a passenger for hire (section 5300, above).

The judgment and order are reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.