VERA McINTOSH, Plaintiff and Appellant, *v*. LINDER-
KIND LUMBER CO., a Corporation, Defendant and Re-
spondent.

No. 10721.
Submitted May 13, 1964. Decided June 19, 1964.
393 P.2d 782.

(1)

2

Sorenson & Snyder, Stanley P. Sorenson (argued), Charles Snyder, Helena, for appellant.

Herron & Mufich, Clayton R. Herron (argued), William Mufich, Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a directed verdict, rendered after the completion of defendant's testimony, in favor of the defendant and against the plaintiff. Upon judgment being entered the plaintiff made a motion for a new trial which was refused and this appeal ensued.

The facts for the most part are uncontroverted. The plaintiff a forty-four year old female suffered an injury as a result of a fall on the premises of the defendant. She had been for many years a cook in various restaurants in Helena, in which capacity she was the main source of income to her family. She alleged that as a result of the fall she could no longer work. The testimony concerning the fall showed that she went to the defendant's premises, accompanied by her husband to purchase some roofing for their home. The defendant's premises had been picked up sometime before her arrival by the customary Saturday morning cleanup crew and no evidence was given

that showed that the premises were in a dangerous condition at the time of her visit. The defendant's premises were typical of lumber yards, in that there was a runway through the building and it was in this area of the building that the plaintiff was standing when the accident occurred. According to the testimony of plaintiff and her husband, a truck that had been loaded by one of defendant's employees started to pull out down the throughway, and when plaintiff's husband warned her to look out for the truck she stepped back and in so doing she was stabbed by a piece of tin in the calf of her leg; that as a result of the stab she was thrown off balance and fell backward, and in so doing she twisted her body in the fall trying to maintain her balance. She testified that she fell hard and that the fall shook her up. Her testimony reveals that she was picked up by her husband and by Mr. Cloud, one of the defendant's employees, who brushed her off and while the record is not clear it would appear that a band aid was put on the cut while she was on the defendant's premises. However, no doctor was called by either party at that time.

Plaintiff testified that she worked the night of the fall even though she said her back "felt like two pieces of grist a rubbing together," and that she worked every day for a week. However, that during the week the back gave her pain until finally she had to get medical help. She was immediately hospitalized by her doctor, Dr. Bossler, for a period of two weeks locally and an additional five days in Great Falls. During her hospitalization she spent considerable of the period in traction and has since received therapy treatments, however, even with this medical help she continues to be in pain and is unable to work at her job as a cook.

Doctor Bossler, her attending physician, testified as to her medical treatment, hospitalization, and the prognosis of her case. During her hospitalization she was X-rayed and there was some question on his part and on the part of the radiologist, who read the X-rays, whether or not she had suffered a

fracture. There appeared to be a line on the X-ray that caused the radiologists to think she had sustained a fractured sacrum. The fact that she was extremely tender over the sacrum on the back to Dr. Bossler implied a fracture, and he said if it was a fracture it had not displaced to any appreciable degree. He testified that in his opinion that the injury he treated was from her fall. He also thought that she would require therapy for from six months to a year and that surgery was a possibility.

Considerable time and testimony was devoted to the piece of tin that caused the accident. The defendant points out that no evidence was given as to how the tin happened to be on the floor or how long it had been there, and goes further in saying that having failed to give any testimony on these two points there could be no error in the court's action directing a verdict for the defendant. The plaintiff admitted that she did not see the tin prior to the accident, but said that after she fell she saw the tin and that it was in a roll and there was a jagged edge, and that the roll was lying down and not standing.

The plaintiff sets forth two specifications of error.

1.   That the court erred in sustaining the motion for a directed verdict on the ground that there was sufficient evidence to submit the case to the jury.

2.   That the court erred in overruling and denying the plaintiff's motion for a new trial.

We are presented with just one question on this appeal, and that is, whether there was sufficient evidence of negligence under the facts to have submitted this case to the jury.

This court has held many times that a cause should never be withdrawn from a jury unless the conclusion from the facts follow, necessarily, as a matter of law, that recovery cannot be had upon any view which can reasonably be drawn from the facts which the evidence tends to establish. Castle v. Thisted, 139 Mont. 328, 363 P.2d 724; Welch v. Nepstad, 135 Mont. 65, 337 P.2d 14; Nissen v. Johnson, 135 Mont. 329, 339

P.2d 651; Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1.

In this case, both parties admit that the plaintiff was a business invitee, with the defendant contending that he is not an insurer of the safety of his customers and that he is bound to use only reasonable care in keeping his premises in such a condition that those invited there may not be unnecessarily exposed to danger. Rossberg v. Montgomery Ward & Co., 110 Mont. 154, 99 P.2d 979; Phillips v. Butte Jockey Club, 46 Mont. 338, 127 P. 1011, 42 L.R.A.,N.S., 1076; Montague v. Hanson, 38 Mont. 376, 99 P. 1063.

■ The plaintiff was a business invitee when she entered the defendant's place of business where she purchased roofing for her home. Under such a situation, she had every right to assume that the floor area was suitable and safe to walk upon to carry on her purpose without injury to herself. See, Anno. 100 A.L.R. 720-21.

■ Whenever men engage in business and invite the public, either expressly or impliedly, to come on their premises to patronize them, there is a duty resting on the proprietor in control of the premises to use due care to keep in a reasonably safe condition those portions of the premises where patrons or customers may be expected to come and go, and he is liable to those who without their own fault are injured by his failure to do so. If there is a dangerous place on his premises, he must safeguard those who lawfully come thereon warning them of the danger. Kerns v. F. W. Woolworth Co., 138 Mont. 249, 356 P.2d 127; Chichas v. Foley Bros. Grocery Co., 73 Mont. 575, 236 P. 361; Liston v. Reynolds, 69 Mont. 480, 223 P. 507; Restatement, Torts, § 342; 65 C.J.S., Negligence, § 45, p. 521; 38 Am.Jur., Negligence, § 131, p. 791. The true ground of liability is his superior knowledge over that of business invitees of the dangerous condition and his failure to give warning of the risk, however, he is not an insurer against all accidents which may befall them upon his premises.

Without making an extended review of the decisions cited, suffice it to say we think they are not helpful to the defendants for the reasons hereinafter noted. As previously indicated, the liability of a proprietor of a business is predicated on his superior knowledge concerning dangerous conditions and his failure to warn. With respect to the necessity of proof that the proprietor of the business in which the plaintiff was injured in a fall upon the floor had notice, the cases seem divided into two classes: (1) injuries to customers caused by dangerous condition negligently created or maintained by the proprietor or servants; (2) injuries due to dangerous conditions coming about through no active fault of the proprietor and not involving an instrumentality used by him in the conduct of his business. Engdal v. Owl Drug Co., 183 Wash. 100, 48 P.2d 232; Lee v. Meier & Frank Co., 166 Or. 600, 114 P.2d 136; Klein v. Montgomery Ward & Co., 263 Wis. 317, 57 N.W.2d 188.

Here, the proof showed that the plaintiff entered upon the defendant's premises to purchase roofing, that while there and in an effort to not be hit by a vehicle using the passageway, she was cut by a piece of tin causing her to fall and suffer the injuries testified to at the trial. There was nothing to warn her of this condition which caused her fall so we cannot say as a matter of law that she assumed the risk of an unknown hazard.

Upon entering the premises, a mature and normal customer must make reasonable use of his faculties for his own use and protection and in the interest of his safety he is required to use that degree of care that an ordinarily prudent person would use under the same or similar circumstances. 38 Am.Jur. Negligence, § 199, p. 879, and § 131, p. 791. But where a customer, in the proper course of business, steps back to protect herself from possible injury, she would not ordinarily be expected to look behind on each step taken. In absence of circumstances which indicate or which would reasonably indicate the existence of defects or dangers, then she may assume

that the premises are safe for the use made of them under the invitation to be present in the store. In other words, it is not contributory negligence for a business invitee to fail to look out for danger when there is no reason for an ordinarily prudent person to apprehend a peril. As a matter of law, one is not guilty of negligence who does not look for danger where there is no reason to apprehend any.

Our statute on directed verdict, section 93-5205, R.C.M.1947, provides:

"Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

In interpreting this statute in the many cases before this court three rules were set down in Johnson v. Chicago, M., St. P. & Pac. Ry. Co., 71 Mont. 390, 230 P. 52, that have served as guidelines for this court. There we held that:

1. Upon a motion for a directed verdict in favor of the defendant, the evidence introduced by the plaintiff will be considered in the light most favorable to him and as proving whatever it tends to prove.

2. A cause should never be withdrawn from the jury, unless the conclusion from the facts follows necessarily, as a matter of law, that a recovery cannot be had on any view which can be drawn reasonably from the facts which the evidence tends to establish.

3. In reviewing an order directing a verdict for the defendant, this court will consider only the evidence introduced by the plaintiff, and if that evidence, when viewed in the most favorable light, tends to establish the case made by the plaintiff's pleadings, the order will be reversed.

The evidence here, viewed in its most favorable light, we feel required the submission of the case to the jury.

The cause is reversed and remanded for new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and DOYLE, concur.