LETHA P. GUNDERSON, Plaintiff and Respondent, v.
GLEN O. NOLTE d/b/a Rimrock Lodge, Defendant and
Appellant.

No. 11615.
Submitted May 13, 1969.
Decided June 16, 1969.
456 P.2d 282.

Anderson, Symmes, Forbes, Peete & Brown, Sam Haddon argued, Billings, for defendant and appellant.

Loble, Picotte & Loble, Gene A. Picotte, argued, Lester H. Loble, II, argued, Helena, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

A tenant secured a jury verdict of $28,118.30 against a motel owner based upon injuries sustained in a fall while stepping out of a bathtub. The motel owner appeals from the judgment.

entered on this verdict and from denial of his motion for judgment notwithstanding the verdict or for a new trial.

On August 16, 1966 plaintiff Letha P. Gunderson (hereafter called tenant) rented a motel room in Billings at the Rimrock Lodge which was owned and operated by defendant Glen O. Nolte (hereafter called motel owner). Tenant's motel room did not have a private bath, but did have a bathroom which was shared in common with the occupants of three other rooms. At about 11:00 p.m. the following night, tenant went to this bathroom for the purpose of bathing. She took with her from her motel room her purse, two towels, and a washcloth.

The bathroom was well lighted and everything therein was clearly visible. The floor of the bathroom was covered with an unwaxed linoleum tile. The bathtub was built into one end of the room with walls abuttnig on three sides. It was about 4½ feet long, 32 inches wide, and 14 inches deep on the inside with the top of the bathtub about 16 inches above floor level. Hot and cold water faucets were located on the wall at one end of the tub about 8 inches above the top of the bathtub. A shower head was located on the same wall about 4½ feet above the top of the tub. A shower curtain was suspended on a curtain rod across the open side of the tub. This curtain rod was about 6 feet above the floor and was anchored solidly at both ends to the walls.

The only other objects in the bathroom were a wooden chair and a small wastepaper basket. There was no sink or toilet in the room. Neither were there any towel racks.

After entering the bathroom, tenant placed the chair alongside and several inches away from the bathtub with the back of the chair facing the tub in order to have something to hold onto in stepping in and out of the tub. She put her purse on the chair and her bath towel over the back of the chair. A small hand towel which tenant had brought from her motel room was placed in the bottom of the tub. Using the chair to steady herself, she stepped into the bathtub and took a shower without

incident. After finishing her shower, she stepped out of the tub backwards with her left foot and took hold of the top of the chair. Using her left foot on the floor and her hand on the chair to steady herself, she started to lift her right foot out of and over the side of the tub. As she turned in so doing, the chair slipped along the floor and overturned causing her to fall and sustain various injuries.

The case was tried on an amended complaint alleging negligence on the part of the motel owner consisting of (1) failure to maintain the premises in a safe condition, (2) failure to provide instrumentalities or means of a safe exit from the bathtub, (3) failure to warn of the dangerous condition, and (4) failure to take aodequate steps to protect the public. The amended complaint additionally contained approximate allegations of proximate cause and the resulting injuries and damages.

The motel owner's answer consisted of a general denial together with affirmative defenses of contributory negligence and assumption of risk. No pre-trial order was entered.

The case was tried in the district court of the 13th judicial district, Yellowstone county, commencing on November 25, 1968, before the Honorable C. B. Sande, district judge, with a jury. At the conclusion of all the evidence defendant motel owner moved for a directed verdict or dismissal of the complaint which was denied. The case was submitted to the jury who returned a verdict for plaintiff in the full amount prayed for in her amended complaint. The district court entered judgment in accordance with the jury verdict.

Thereafter defendant motel owner moved to set aside the judgment on the verdict and for entry of judgment for defendant in accordance with his motion for directed verdict at the conclusion of all the evidence at the trial. In the alternative, defendant motel owner moved for a new trial. Following denial of these motions, defendant has appealed therefrom and from the judgment on the verdict.

Defendant assigns as issues for review upon his appeal:

(1) Did the district court err in refusing to grant defendant's motions for a directed verdict or dismissal of the complaint at the conclusion of all the evidence?

(2) Did the district court err in refusing to grant defendant's motion for a new trial?

Directing our attention to the first issue, the motel owner first contends that the facts fail to establish any breach of duty owed by him to the tenant. He argues that there is a total absence of evidence that the chair was defective in any way or that it constituted a hidden or lurking danger. Hence, according to the motel owner, he breached no duty he owed to the tenant and accordingly was not negligent.

■ Plaintiff's status as a business invitee on the premises is conceded. Accordingly, the duty owed by the motel owner to his tenant is to use ordinary care to have the premises reasonably safe for the tenant's use and to warn the tenant of any hidden or lurking danger therein. Vogel v. Fetter Livestock Co., 144 Mont. 127, 394 P.2d 766 and cases therein cited. The rule is sometimes stated in the disjunctive. Suhr v. Sears Roebuck & Co., 152 Mont. 344, 450 P.2d 87; Luebeck v. Safeway Stores, Inc., 152 Mont. 88, 446 P.2d 921; Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509. Regardless of whether the rule is stated conjunctively or disjunctively, the duty owed by the motel owner to his tenant encompasses both the duty to use ordinary care to keep the premises in reasonably safe condition and the duty to warn of hidden or lurking dangers. Regedahl v. Safeway Stores, Inc., 149 Mont. 229, 425 P.2d 335. Mr. Justice Doyle, speaking for a unanimous court in Regedahl, succinctly expressed the dual nature of the duty in the following language:

"Safeway made no claim that it had warned the respondent. Therefore, the jury was in position to consider the existence of liability on either the ground of *breach of the duty to keep the premises reasonably safe or breach of the duty to warn.*"

■ In the instant case the motel owner acknowledges in his brief that "the case was tried on the theory that the Defendant

negligently failed to provide the Plaintiff with a safe means of exit from the bathtub''. It is undisputed that there was no handrail, grab bar, or similar device to assist the tenant in exiting from the tub. It could conceivably be argued that the failure of the motel owner to provide a grab bar or similar device does not constitute negligence consisting of breach of the motel owner's duty to use ordinary care to keep the bathroom in a reasonably safe condition for the tenant's use. It can likewise be pointed out that the shower curtain rod, the shower head, or the shower faucets were available to hold onto in safely exiting from the bathtub without recourse to the chair. At most this simply creates a jury issue on performance or breach of the landlord's duty to use ordinary care to keep the premises in a reasonably safe condition, precluding a directed verdict or dismissal on the breach of duty issue.

However, the motel owner further contends that he was entitled to a directed verdict or dismissal because the facts establish both a lack of due care and assumption of risk by the tenant.

It is axiomatic that failure of the tenant to use ordinary care proximately contributing to his injury and damages bars any recovery against the motel owner. The standard of conduct to which the tenant must conform is that of an ordinarily prudent person under the existing circumstances. See McIntosh v. Linder-Kind Lbr. Co., 144 Mont. 1, 393 P.2d 782. While the absence of a handrail, grab bar, or similar device was visible and obvious, can it be held as a matter of law that the tenant failed to act as an ordinarily prudent person in taking a shower nonetheless? We think not. Here it is arguable that the tenant took such precautions as were then available to her to enable her to make a safe exit from the bathtub. She placed a hand towel on the floor of the bathtub so she would not slip there. She placed the chair on the floor near the bathtub so that she could steady herseuf in exiting from the tub. In our view this creates a jury issue on contributory negligence. For similar rationale see: Roman v. King, 289 Mo. 641, 233 S.W.

161, 25 A.L.R. 1263 and cases cited beginning at page 1328.

The motel owner next argues that the facts establish assumption of risk by the tenant as a matter of law barring recovery by her in any event. He points out that the conditions in the bathroom were known to the tenant and she voluntarily elected in the face of the known conditions to take a shower anyway thereby assuming the risk.

The defense of implied assumption of risk is bottomed on consent. 2 Restatement of Torts 2d § 496, comment b. and § 496C, comment b; Prosser Torts 3rd Ed., page 450 et seq. It is founded on the principle that he who consents to an act will not be heard to claim that he is wronged by it. Osterholm v. Boston, etc., Mining Co., 40 Mont. 508, 107 P. 499; Fotheringill v. Washoe Copper Co., 43 Mont. 485, 117 P. 86.

An indispensible element of the defense of implied assumption of risk is a voluntary remaining or continuing in the face of the known dangerous condition. Hanson v. Colgrove, 152 Mont. 161, 447 P2d 486; D'Hooge v. McCann, 151 Mont. 353, 443 P.2d 747; Wollan v. Lord, 142 Mont. 498, 385 P.2d 102. A plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to exercise a right or privilege of which the defendant had no right to deprive him. 2 Restatement of Torts 2d § 496E, comment c; Prosser Torts 3rd Ed. pp. 465, 466. Thus where a landlord maintains a privy with a defective condition in the floor for the use of tenants generally, a tenant using the privy and falling through the floor does not assume the risk of injury since the tenant is not required to leave the premises and go elsewhere. Rush v. Commercial Realty Co., 145 A. 476, 7 N.J.Misc. 337. As summarized in Prosser Torts 3rd Ed. pp. 465, 466:

''Even where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a

choice of evils, there is a species of duress, which destroys all idea of freedom of election."

Here the tenant had a contractual right to use the bathroom by virtue of her rental from the motel owner. The tenant paid the motel owner for use of the bathroom and it was the motel owner's duty to use ordinary care to keep the bathroom in a reasonably safe condition for the tenant's use. The tenant was not required to forego its use simply because the motel owner arguably failed to use ordinary care to maintain it in a safe condition. Thus a jury issue is created as to whether the tenant's acceptance of the risk was voluntary or not. Consequently the facts do not establish the defense of assumption of risk as a matter of law.

For the foregoing reasons we hold that the district court was correct in refusing to grant defendant's motions for a directed verdict or dismissal of the complaint at the conclusion of all the evidence.

Directing our attention to the second issue assigned for review, viz. whether the district court erred in refusing to grant the motel owner a new trial, defendant argues that the verdict is excessive, not supported by the evidence and was the result of passion and prejudice on the part of the jury. Defendant points out that the special damages were minimal, that plaintiff did not see a physician for her injuries after leaving Billings until some 3 or 4 months later and did not make complaint about the injury to her hip until some 2½ years after the accident, that the casual relationship between plaintiff's accident and her condition was subjective and speculative, and that the jury awarded her the entire amount prayed for, in her complaint.

The evidence on damages at the trial was uncontradicted and introduced entirely by plaintiff's witnesses. This evidence by plaintiff herself and her medical witnesses is clearly susceptible to an interpretation indicating that she now walks with a limp, must use a cane, is in continual pain, and has partially lost the use of her arm and shoulder. The evidence further

shows that her physical disabilities are permanent, progressive in character, and her medical prognosis is poor. Additionally her mental state is poor and she is no longer able to follow her established course of life. Under these circumstances, the jury award of general damages of approximately $28,000 appears reasonable. We are unable to conclude that it is so grossly disproportionate to the harm suffered as to shock the conscience or that it demonstrates that the jury made the award influenced by passion and prejudice. Additionally the matter of casual connection goes to the weight to be given the testimony of plaintiff and her witnesses which is for the jury and was determined by their verdict herein. For these reasons we hold the district court was correct in refusing the motel owner a new trial.

The judgment of the district court is affirmed.

MR. JUSTICES JOHN C. HARRISON and BONNER, concur.

MR. JUSTICE CASTLES and MR. CHIEF JUSTICE JAMES T. HARRISON (dissenting):

We dissent.

An initial reading of the majority opinion may not impress the reader that any change in the structure of this Court's rulings in tort cases has occurred. But, in the light of the whole record, a marked change has occurred. Traditional rules of negligence and proximate cause have apparently been abandoned.

In addition to what the majority opinion relates as the facts here, these matters appear: Plaintiff was a heavy woman, 57 years of age. She was a motel and cafe owner and operator in Boulder, Montana. She had at least two operations before the incident involved here, one intestinal and one for a blood clot in her leg. When she was treated in the emergency room of the hospital in Billings she had a superficial laceration on the eyebrow and complained of a shouler contusion. X-rays re-

vealed no other evidence of acute injury but did show minimal arthritic changes. No further treatment was indicated after the sutures were removed. *No complaint was made of any hip injury.* Even later, in December 1966, when she consulted her own doctor in Helena with pneumonia and pain in her arm and shoulder, no complaint was made of any hip injury. She did not see that doctor again until March 1968. She had seen another doctor with shoulder complaints and for headaches in March 1967 and another in January 1968 for bronchitis. It was not until March 26, 1968 that any reference was made by plaintiff of the accident in August 1966 to her own doctor!

At the opening of the trial the plaintiff moved to amend her pleading in several particulars. The complaint as amended read in part as follows:

"II

"That on or about August 16, 1966, the plaintiff was renting and was a tenant of one of the units of Rimrock Lodge owned and operated by the defendant; that on or about the 16th day of August, 1966, and for some time prior thereto, the defendant negligently failed to maintain his premises in a safe and proper condition, and was otherwise negligent, in that the defendant negligently * * * *failed to provide instrumentalities or means for the safe exit of members of the public, and particularly the plaintiff, from the bathtub in the bathroom furnished by the Defendant on his said premises, for Plaintiff's use, as a business invitee on said premises, and failed to warn the public and particulary the. Plaintiff of the danger resulting from Defendant's said failure, and failed to take adequate or any steps to protect the public, and particulary the Plaintiff, from the aforesaid danger.*" (Amendments italicized)

"That on the aforesaid date, plaintiff *while exiting from said bathtub, lost her balance,* slipped and fell *in said bathroom,* and was injured and damaged as hereinafter set forth, all as a proximate result of the defendant's negligence heretofore alleged; that as a result plaintiff *lost her balance* and slipped and

fell to the floor with great force and violence, * * *."
(Amendments italicized)

The plaintiff's counsel also made the following statement for the record with regard to the plaintiff's contentions in the case.

"It has been discovered that it is the Plaintiff's position, and it will be her testimony, that this accident resulted not from a slippery floor in the bathroom outside the bathtub, but from the fact that she was caused to fall when she lost her balance and slipped and fell while hanging onto a chair getting out of the bathtub, which chair slipped away from her and tipped over so that she had no support, and that was what really caused her to fall. Her testimony will be that so far as she is concerned, she did not consider the floor of the bathroom in the condition it was unsafe for her to walk upon at the time of the accident."

The plaintiff's testimony was that "the chair gave way and I slipped on this floor." Previously in interrogatories she had said she slipped on water and soap. She also previously described her exit from the tub differently.

In Knowlton v. Sandaker, 150 Mont. 438, 436 P.2d 98, this Court in a unanimous opinion reiterated the rule that to sustain an action for personal injuries based on negligence, the plaintiff must establish not only that the defendants were negligent in that they breached a legal duty imposed upon them, but also that this negligence was the proximate cause of the injury suffered.

The facts in the instant case fail to establish any breach of duty by the defendant owing to the plaintiff. On the other hand, the facts do establish a lack of due care and assumption of risk by the plaintiff.

The case was tried on the theory that the defendant negligently failed to provide the plaintiff with a safe means of exit from the bathtub. The proof offered in support of the contention established the following and no more: That as the plaintiff was getting out of the tub she lost her balance, the chair which

she was holding by one corner of the top slipped and she fell. The record is totally void of any evidence that the chair was defective in any particular or that it in any way constituted a hidden or lurking danger. A hidden danger is one which is hidden from knowledge as well as from sight and which could not be discovered by the exercise of reasonable care.

All of the facilities in the bathroom were clearly visible. The shower curtain rod was available to hold on to in order to maintain her balance when stepping from the tub. The tub was walled in on three sides and was only sixteen inches high. There was no evidence of any defect in any of the facilities, including the chair. Under these facts the plaintiff failed to make out a *prima facie* case. Knowlton v. Sundaker, supra.

Now, if we understand this Court's majority opinion correctly, a jury may decide what the landlord's duty was; and that "failure to provide a handrail, grab bar or similar device to assist the tenant in exiting from the tub" can be found as negligence. Further that this "negligence" somehow became the proximate cause because if something else had been provided she would not have used the chair; and, if she had not used the chair she would not have lost her balance!

Further, the opinion notes, that it was 2½ years later that plaintiff first said anything to anyone about any injury to her hip. Neither did she apprise the treating doctors about any injury to the hip. The first note of any hip injury being related to the fall in the bathtub came in the plaintiff's relation of it to her physician. The physician was not apprised of even that until March 1968. There was no valid medical testimony relating the condition of the plaintiff's hip to the accident of 1966. We would at the very least grant a new trial. Further, we believe the judgment should be reversed and the cause dismissed.